Syllabus.

RICHARDSON & MAY v. BOARD OF LEVEE COMMISSIONERS.

1. EMINENT DOMAIN.  *Condemnation for levees.  Measure of compensation.*
    In the absence of a statute so providing, the owner of lands near the Missis-
    sippi river is not entitled to damages because of a failure by the levee board
    to so place levees as to protect the same from overflow, or because the levee
  · prevents the river water from flowing off as it otherwise would, or because
    it deepens the water on his land between the river and the levee during
    an overflow, and thus renders it worthless for agriculture.  These are
    unavoidable consequences of the situation, and of the authorized effort
    to promote the general good by the confinement of the waters of the river.
    *Commissioners* v. *Harkleroads,* 62 Miss. 807.

2. SAME.  *Removal of houses to the protected side.*
    For the same reason the land-owner cannot recover for expenses incurred
    in removing houses from the exposed to the protected side of the levee,
    made necessary by expected future overflows.

3. CONSTITUTIONAL LAW.  *Act of* 1884.  *Eminent domain.  Due compensation.*
    Under the act of March 13, 1884 (Laws, p. 163), conferring the right of
    eminent domain upon the board of levee commissioners for Bolivar,
    Washington, and Issaquena counties, one whose land is taken by it for
    levee purposes is entitled to be paid " the cash value of the land or
    material occupied or used for the right of way of said levee or for other
    purposes, and also the damages caused to the owner's adjacent property
    by reason of the use of his land or other property for right of way for
    said levee, or for other levee purposes."  This meets the constitutional
    guaranty of due compensation for private property taken for public use,
    and is the measure of damages allowed to such owner.

4. SAME.  *Measure of damages.  Test; when improper.*
    The difference in the value of the entire tract of land before and after taking
    a part thereof for levee purposes, is an improper test in determining the
    damages caused to the owner from the construction of the levee.

5. SAME.  *Injury to land left unprotected.  Evidence.  Relevancy.*
    Evidence of the successful cultivation of other tracts of land lying between
    the levee and the river was in this case rightfully excluded, if for no
    other reason, because of irrelevancy, since it was claimed by the owner,
    and shown by the evidence, that the tract here thrown out was rendered
    valueless for agricultural purposes.

6. CONDEMNATION FOR LEVEE PURPOSES.  *Damages under act of* 1884.  *What allowed.*
    While the statute does not allow damages which result from the accomplish-
    ment of the purpose of the levee, namely, the confinement of the water

of the river, it does allow, in addition to the cash value of the land and property occupied or used, all other damages to the owner's adjacent lands on either side of the levee, directly caused by the taking of part of his land and from the construction of the levee.

7. SAME.  *Damage to adjacent lands.  Drainage.*

The expense of drainage for the land on either side of the new levee, made necessary to protect it from overflow or sipage of rain water, should be allowed, but not the expense of draining the overflow and sipage water coming from the river.

8. SAME.  *Evidence.  Value of lands when unprotected.  Act* 1884.

Under said statute of 1884, evidence of the diminished value of the owner's lands adjacent to the river, when wholly unprotected by any public levee, as compared with their value when protected, is competent, as enabling the jury to better determine what damage was done to such lands by the building of the new levee.

FROM the circuit court of Issaquena county.

HON. GEORGE WINSTON, Judge.

By an act of the legislature, approved March 13, 1884, entitled, " An act to amend an act to incorporate the board of levee commissioners for Bolivar, Washington, and Issaquena counties, and for other purposes, approved November 27, 1865, and to revise acts amendatory thereof," the right was given to said board of levee commissioners to appropriate any lands needed in the construction of levees in said counties along the Mississippi river.   The said act provides for the appointment of three disinterested freeholders of each county, to be known as commissioners to assess levee damages, and to these commissioners is given the exclusive right to assess and award compensation and damages for land or material taken or damaged in the construction, maintenance, or repair of levees.   It is provided that said commissioners in making up their award shall ascertain and determine " the cash value of land or material occupied or used, or to be occupied or used, for the right of way of said levee, or for other levee purposes, and also the damages caused to the owner's adjacent property by reason of the use of his land or other property for right of way for said levee, or for other levee purposes, and such cash value and damages shall make up the sum of their award."

The appellants, Richardson & May, are the owners of a plantation in Issaquena county, lying along the Mississippi river.   Owing to the constant caving of the banks and the consequent encroachment of the river upon the levees heretofore constructed by said board across their plantation, it became necessary, in the judgment of the said levee board, to construct a new levee across the plantation.   Accordingly a line for the levee was surveyed, and the board of levee commissioners, by its president, made application under said statute for a writ *ad quod damnum* to ascertain the damages that would be suffered by appellants because of the construction of the levee.   It was conceded that the line for the levee selected by the board of commissioners left between it and the remnant of the old levee about 420 acres of land, upon which stood about 33 cabins and other buildings, including a store-house, dwelling-house, and gin ; some of these houses being within 200 feet of the river bank. The commissioners awarded to appellants $4070.49, from which award appellants appealed to the circuit court and recovered a verdict and judgment there for $4575, and being still dissatisfied, they appeal from that judgment to this court.   Under the rulings of the lower court, the verdict included the value of the land actually taken at the rate of $50 per acre, the value of the growing crops destroyed, the damage to drainage, both within and without the levee.   No allowance was made for damages to the land lying between the new levee and the river, caused by its exposure to overflow, nor for the expense necessary in removing houses from the unprotected to the protected side of the new levee.

Since the court in its opinion has not stated or noticed in detail the many errors assigned, but announces its conclusions as drawn from a survey of the whole case as presented by the record, it is deemed necessary at least to set out the instructions on both sides which were given by the court, the instructions refused to appellant being in the main the converse of those given for the appellee.

The instructions given at the instance of appellee, the levee board, are as follows :—

" 1. The court instructs the jury that in estimating the amount of damage done to plaintiffs by the construction of the levee through

their land, they will take into consideration two, and only two, elements of damage : 1st. The actual cash market value of the land occupied by the levee line and barrow pits, to wit, 53 acres, and the damage to the two cabins thereon, and the value of the crops on the line of the levee, *i. e.*, $638.99. 2d. The injuries to the adjacent property and land of plaintiffs, known at the time of the condemnation necessarily to result from the taking of the piece occupied for levee purposes.

" 2. The court instructs the jury that in determining the fair cash value of the land taken, that is the land included in the levee line and barrow pits, they can take into consideration in connection with the opinion of witnesses given in evidence, the physical facts surrounding said lands which they may believe to be shown by the evidence, and which in their opinion affect the value of the land, such as proximity to the river bank, the rate of caving for the past four years, the probability of said caving continuing, if they believe there is such probability, and any other circumstances surrounding the property which may be shown by the evidence, and which in their opinion would affect one desirous of purchasing it."

" 3. The court instructs the jury that, in ascertaining the value of the land actually taken, they are to be governed by what was the fair cash market value of it; that is, not the valuation that the owners may have held it at, or what they would have been willing to take for it, but what they could have sold said land for in the market at a cash price to a purchaser with the means to buy, and willing to pay its fair cash value, if they had been allowed a reasonable time in which to sell it.

" 4. The court instructs the jury that as to the damages sustained by plaintiffs by reason of the building of the levee through their land, other than the actual cash value of the land taken, it is composed of two elements; first, the depreciation in the value of the property by reason of the inconvenience resulting from having it intersected by the levee; and, second, the damage done to the drainage of the plantation by the construction of the levee through it.

" 5. The court instructs the jury that as to the land east of the

new levee, if they believe from the evidence that it is affected by sipe water only when the overflowing waters of the Mississippi river are against the new levee, and that such damages from sipage water results from the overflow water being held back by the levee, then they will award nothing for such damage, as it results simply from an effort by the levee board to protect the land.

" 6. The court instructs the jury that the levee board is not responsible for any damage that may result to the land outside of the new levee, from the fact that said board fails to protect it from overflow of the river, and that it thereby becomes subject to annual inundations from said river.

" 7. The court instructs the jury that, as to the damage done to the drainage of the land outside of the new levee, if they believe it to be a fact that, on account of said land not being protected from the river water, it will hereafter be subject to overflow to the depth of from two to five feet annually, and that because of said overflow, and because of the fact, if the jury believes such to be true, that the new levee will hold said overflow water in said land, not permitting it to run off as if no levee was there, and will increase the depth of the same ; that said land will be rendered partially worthless for agricultural purposes, then the court instructs the jury that the levee board is not liable in damages for such injury, and if from said causes said land will be rendered worthless for agricultural purposes, then the jury will allow nothing for damage to said land for agricultural purposes by rain water.

" 8. The court instructs the jury that, if they believe the land outside of the new levee is injured but not rendered worthless by the rain water, and that it will be still further damaged by rain water, from the fact that the levee will obstruct its drainage, then they will allow only for such additional injury as they may estimate is suffered by the land from rain water in its depreciated condition, and in no event will they allow a greater amount for damages to drainage than the cost of draining said land by other drains, if they believe such other drains be feasible.

" 9. In arriving at the value of the land taken, the true criterion shall be its cash market value, as exposed to overflow and

caving by the rain prior to the construction of the new levee, and the jury shall eliminate from their estimation all value derived by the construction of said new levee."

The instructions given in behalf of appellants, Richardson & May, some of them containing modifications by the court, were as follows :—

" 1. The court instructs the jury that the law provides that when private property is taken for public use, the owner must be paid full value for the land actually taken, and for the damage done to the adjacent property by reason of the taking of a part, and this compensation must be in money, and cannot be offset by any good that the taking of a part may do, and the jury in this case cannot consider any benefit that may result to the appellants by the building of the levee in reducing the damage their property may have suffered by the building of the levee.

" 2. The court instructs the jury that they must find in favor of appellants the value of the crops on the line of levee, $638.99 ; the cost of moving the two houses off the line of the levee ; the cash market value of the land actually taken for the levee, 53 acres, and all other damages that will be done to the remainder of the land by the building of the levee, including the cost of digging a ditch on the east side of the levee, if they believe from the evidence that rain water, in the absence of river water, will dam up on the same so as to sipe through the levee and render such ditch necessary, unless they believe that it is practicable to drain off such rain water from said land so as to prevent such sipage and render such ditch unnecessary.

" 3. The court instructs the jury that if the land taken and houses thereon adjacent to the levee will be damaged by the rain and sipe water, and that this damage cannot be avoided by draining it off, and will be such that the houses will have to be moved to avoid such damage, and that moving of the same will be the cheapest mode of avoiding such damage, then the jury will find to the extent to which the land will be damaged by such water and the cost of moving said houses.

" 4. The court instructs the jury that by the first instruction

given for the defendant is meant such damage as the jury can say from the testimony will result to the property."

" 5. The court instructs the jury that if the land between the new levee and the river will be damaged by stopping the drainage thereon, and damming the rain and sipe water on it by the levee, and that it is not practicable to drain this water into the river or Hays lake, then they will assess such damage as is done to such land from such rain and sipe water."

" 6. The court instructs the jury that by the second part of the first instruction for the defendant is meant such damage to the adjacent land as the jury can say from the testimony before them will result to the land from the building of the levee."

" 7. The court instructs the jury that if the land on the west side of the levee will be damaged by the Mississippi river water, still if there will be damage to such land by the rain and sipe water, distinct and separate from the damage by the Mississippi river water, then the jury must assess in favor of the appellants such damage as will be done by the rain and sipe water, such damage to be limited to the cost of draining off such rain water and sipe water, if they believe such drainage is practicable."

" 8. The jury are further instructed that in finding the cash market value of the land actually taken for the levee, they are not to be governed by the price for which the strip so taken could be sold for in open market, without reference to the adjacent parts of the tract, but by what its cash market value in open market would be taken as a part of the whole tract, not at a forced sale."

" 9. The jury are instructed by the court that Richardson & May are entitled to recover of the board of Mississippi levee commissioners the value of the land appropriated by said board for the construction of the levees, and also to recover in addition such sums as the evidence shows Richardson & May to have been damaged by the construction of the levees in the place where they were built on their lands. By the value of the land taken is meant its cash value in the market at the time of its appropriation, not what said land would have brought at forced sale, but what Richardson & May could have obtained for it, in case they had wished to sell,

68 MISS.—35

and from a purchaser having the money to buy, and willing to pay its full cash value at that time. Should you be satisfied from the evidence that Richardson & May suffered damage from the construction of the levee, beyond the value of the land appropriated, it will become your duty to consider such damage, and allow them therefor such sums as the evidence shows will indemnify them for the injury sustained, provided such damage is immediate and direct, or such as it must have been known would necessarily result, and was capable of definite ascertainment. The true value of the land taken ascertained by the rules above laid down and the actual damage sustained, are the true standard by which you must measure the compensation to which they are entitled, but the jury are not to allow any damages to the land between the new levee and the river which they believe will result from the overflow of such land by the river."

"10. If the evidence satisfies the jury that, by reason of the construction of the levees, any of the lands of Richardson & May lying adjacent to said levee were, as a necessary result of the construction of said levee, diminished· in value or rendered less useful or less profitable to Richardson & May, the jury will assess in their favor such damage as the evidence shows will compensate them for and indemnify them against such loss growing out of the construction of said levee to said land, provided such damages were the direct or immediate result, or such as would necessarily result, from such taking, and were capable of definite ascertainment; but the jury shall not allow any damage which they believe will result to the land between the new levee and the river from the overflow of such land by the river."

*Nugent & McWillie*, for appellants.

It is necessary, first, to ascertain the rule for the measurement of damages applicable in this case. "The elements of damage are always correlative to the right violated, and the amount of compensation, whether measured by legal rules or referred to the discrimination of the jury, must depend on the nature or the right and the mode, incidents and consequences of the violative act." 1 Suth. on Dam. 127.

The injured party is entitled to be made whole, and this is the measure of his right.  *Postal Tel. Co. v. Ry. Co., ante,* p. 314.

The value of property in the market and the injury necessarily known to result to the owner as the immediate consequence of the taking of his property, without reference to the uncertain or remote benefits or disadvantages that may or may not accrue in the future, is the measure of compensation.   *Isom* v. *R. R. Co.,* 36 Miss. 300 ; *Com'rs* v. *Harkleroads,* 62 Ib. 807.

By the construction of the new levee 420 acres of appellants' land will become practically valueless.   All escape for river, rain or sipe water flowing on the land between the two levees will be taken away.   All the tenants' houses, the gin house, and store houses near the old levee must be torn down and removed behind the new levee.

The fact that the country back of and below appellants' plantation may be largely benefited, cannot deprive appellants of just compensation to which they have a right under the constitution. We insist appellants were entitled to the value of the land actually taken ; to the damages resulting from the intersection of their plantation ; the cost of removing the houses ; the value of the growing crops destroyed ; the damages suffered by destruction of natural and artificial drains ; the damage done to land between the two levees by the natural ponding of water upon it, and the cutting off the drainage, since on this land surface water flowed away from the river and towards the levee.

It was proper to show that other lands outside the levee were often cultivated successfully, especially as it had been proved that, without any levee at all, appellants' land could be so cultivated every year.

*Yerger & Percy,* for appellee.

This court will not disturb the verdict unless it is a clear case of error, passion, or prejudice.   Appellants contend that if there was no question of river water, rain water would ruin the out-lying land, as it cannot be drained.   The answer to this is, that it is hypothetical and not applicable to the facts.   It is useless to calculate how much the rain-fall would damage the land if it was

securely protected from overflow, when in fact appellants' own witnesses testify that the annual overflow will certainly render the land entirely worthless. It is like speculating as to how dead the second shot would have killed if the enemy had not expired before it reached him.

Appellants were not entitled to the cost of removing any of the houses except those actually upon the right of way taken for the levee, and for this they were allowed in the verdict. The measure of damages given by plaintiffs' instructions was correct. *Com'rs* v. *Harkleroads,* 62 Miss. 807.

Failure to protect appellees' land is not ground for the recovery of damages in cases like this. The statute has not provided for compensating owners for lands lying near the river for injuries which may incidentally and possibly arise from confining the waters within the levees. The jury was fully instructed as to allowing compensation for every injury inflicted by the building of the levee.

It was not competent to show that good crops were made on certain other places outside of the levee, unless witness could so testify as to afford a comparison of those places with that in question. It was not attempted to be shown that places on the river outside the levee, which were overflowed as deeply as this place by river water, nevertheless made good crops, because the river water went off in time and the rain water was afforded drainage such as could not be given this place. The only error made by the lower court in this respect was in not allowing appellee to prove that land overflowed as this would be is usually abandoned and considered worthless. This was proper as showing market value of the land thrown out and as an important item in the measure of damage done to it by an alleged lack of drainage. We submit that the effort of appellants is to force the levee-board to compensate them for misfortunes inflicted by providence.

CAMPBELL, J., delivered the opinion of the court.

The points presented in this case are too numerous to make it desirable to discuss them *seriatim,* and since they may all be resolved

by the application of a few principles applicable, we content ourselves with a statement of these principles, whereby to test the result reached.

The land-owner is not entitled to damages, because of a failure to so place levees as to protect his land from the water of the Mississippi, or because the levee may prevent such water from flowing off as it otherwise would, and may deepen the water in an overflow on the land between the embankment and the river. These are consequences of the situation and the authorized effort to promote the general good by the construction of levees, and must be borne, because they are unavoidable in the nature of things. The legislative scheme is to protect against water from the Mississippi river, by an embankment sufficient for the purpose, and it is to be put where the board entrusted with the execution of the scheme may determine, and the land-owner must submit to any inconvenience or disadvantage or loss resulting to him, consequentially, as his misfortune to be borne for the general good to which individual convenience must be subordinated, except where it is otherwise provided. *Commissioners* v. *Harkleroads,* 62 Miss. 807. The constitution guarantees due compensation to the owner for property taken for public use, and in observance of this guaranty the act under which this condemnation was made declares that the " cash value of the land or material occupied or used . . . . for the right of way of said levee or for other purposes, and also the damages caused to the owner's adjacent property, by reason of the use of his land or other property for right of way for said levee or for other levee purposes," shall be the measure of due compensation to him. The only place for interpretation is as to what damages are caused to the owner's adjacent property by reason of the use of part of his land for levee purposes, within the contemplation of the act. That damage caused by the success of the scheme in confining the water of the river is excluded, seems clear and has already been announced. That all other damage which is not remote, and arises directly from the taking of part for levee purposes, resulting to the owner's adjacent land immediately from the constructing of the levee, is to be compensated for, seems as clear as the denial of damage by the river.

This is consonant with natural justice, and it may be assumed that it was the legislative purpose to secure to the owner whose land is taken for a levee indemnity for all damage done him as to the adjacent land he owns not arising from the accomplishment of the object of the levee, and directly produced by depriving him of so much of his land as is taken from him, and converting it into such a shape as to do harm to his adjacent land.

We are not willing to declare a rule more precise than this, for, while there may be a general resemblance in all cases of land near the river, there must be individual differences, and each case must be governed by its own peculiar circumstances subject to the general rules announced.

After careful consideration of all the rulings of the court upon questions of evidence, and its action in giving and refusing instructions, our conclusion is that the appellants got the benefit of every rule they were entitled to invoke for the guidance of the jury in assessing damages, and that the finding of the jury should not be disturbed.   The verdict made of the items suggested by counsel for the appellants shows a determination to allow for all the land actually taken at the rate of $50 per acre, the full value of the growing crops on it ($639.00), five hundred dollars for damage to drainage inside (the protected side) of the levee, and $786.00 for damage to drainage outside the levee.   In all this there is nothing of which the appellants can justly complain.   They were denied nothing to which they could legally lay claim.   According to their own testimony, their land between the levee and the river was rendered practically worthless for agricultural purposes, and for this they sought to recover damages.   The removal of the houses to the protected side of the levee was rendered necessary by the annual overflow expected, and nothing was recoverable for that consequential injury.

The effort of the appellants to have applied the test of the value of the tract of land before and after the taking for levee purposes was properly defeated because of its manifest inapplicability. Evidence of the successful cultivation of portions of land between the levee and the river at various places was rightly excluded, if on no other ground, because it was shown by the witness Pepper, and

perhaps others, and made the ground of a claim for damages, that this particular land was rendered valueless for agricultural purposes, and whatever might be true of other lands as to cultivation between the levee and river had no relevancy to this.

The third instruction asked by the appellants might properly have been given as asked, and as modified by the court is subject to verbal criticism, but when considered as to the thought expressed by it, and in connection with the other instructions, no harm was done by the modification.

The value of the land adjacent to the river deprived of levee protection, as compared with its value when protected, was a legitimate subject of inquiry, and no error was committed in overruling the objection of appellants to the cross-interrogatory as to that propounded to the witness Hays. Every inquiry which will enable the jury to determine the damage done to the owner's adjacent land, within the principles announced in this opinion, is proper in a case like this.

*Affirmed.*