STATE HIGHWAY COMMISSION *v*. RANDLE *et al.*

(Division A.   Jan. 31, 1938.)

[178 So. 486.   No. 32996.]

**E. R. Holmes, Jr.,** Assistant Attorney-General, for appellant.

J. W. Backstrom, of Leakesville, **Frank Clark**, of Waynesboro, and **F. B. Collins**, of Laurel, for appellees.

**Smith, C. J.,** delivered the opinion of the court.

This is an eminent domain proceeding in which the appellant seeks the condemnation, for highway purposes,

of land owned by the appellees, and the only question for determination is the amount of the damages therefor to which the appellees are entitled.

In the eminent domain court the appellees were awarded $1,800, from which the appellant prosecuted an appeal to the court below, which tried the case de novo, resulting in a verdict and judgment in favor of the appellees for $2,734.66, from which this appeal is prosecuted.

The main assignments of error are that the court below erred: (1) In admitting evidence introduced by the appellees; and (2) that the damages are excessive.

Two of the formulas, in the absence of a governing statute, adopted by the courts for measuring damages sustained by owners of property by the taking of a portion thereof for public purposes, are: (1) The value of the part taken plus the damage to the remainder; and (2) the difference between the market value of the property before and after the taking. The formula adopted by our Legislature, and which appears in section 1491, Code of 1930, is the ''value of the property to be actually taken'' plus ''the damages, if any, which may result to him [the owner] as a consequence of the taking.'' At the request of the appellant, the court below instructed the jury that the measure of the appellees' damages ''is the difference between the fair cash market value of defendant's property as a whole before the taking of the land described in the application and after said taking.'' For the appellees, the court instructed the jury that they ''are entitled to due compensation, not only for the value of the property to be actually taken as specified in the application, but also for damages, if any, which may result to them as a consequence of the taking.''

It will be observed from this that two different formulas were given the jury for measuring damages. As to whether a different result might be reached by the application of one of these formulas from that which would be reached by the application of the other, see Richard-

son v. Board of Levee Commissioners, 68 Miss. 539, and Orgill on Valuation under Eminent Domain, section 63. The evidence for the appellant was pointed at the difference between the market value of the property before and after the taking, as was also, in the main, the evidence for the appellees.

There were no improvements on the land actually taken, and the evidence as to its value ranged from $5 to $15 per acre; the number of acres taken being 13.2.

The property belonging to appellees consists of a tract of land not exceeding 340 acres, 35 of which were in cultivation. The improvements thereon consist of a two-story, six or seven room house, partly constructed of logs prior to the Civil War; other structures, such as barns, outhouses, etc.; a fence around the entire property; a pear and pecan orchard; a large number of Japonica trees, and ornamental shrubs. As a whole, it constituted an attractive rural residence, and was frequently visited by others because of the beauty of the Japonica trees when in bloom. The highway cuts off a triangular piece of land from the main portion of the property, on which triangular piece lies the land in cultivation and that used by the appellees as a pasture for stock. This triangular piece of land is very much smaller than the other portion of the property. It does not appear how far the highway is from the residence, but it is evidently some distance away. Only four or five of the Japonica trees were on the land taken.

Over the objection of the appellant, the appellees introduced evidence to the effect that the property was of historical interest because the home thereon was established before the Civil War; that in 1880 it was used as a nursery for the growing of flower and fruit bearing trees and ornamental shrubs, some of which still remain on the property. A catalogue setting forth what this nursery produced, published in 1880, was introduced, and there was also evidence to the effect that some of the structures on the land were erected for the housing of

slaves; that the property was originally settled by a man named Gaines, from whom the appellees traced title by mesne conveyances, but there was no evidence that these facts entered into the present market value of the land, or would be taken into consideration by prospective purchasers thereof. Evidence was also introduced that many squirrels were on the property before the highway was constructed, but have now practically disappeared therefrom, and that the construction of the highway had taken "all of the quietness away from the place." It is said by the appellees that the objections to this testimony were not of the character to permit a review of the rulings thereon, but this is true only in part, and aside from that, it is clear from the evidence that the opinion of the witnesses for the appellees as to the value of the land before and after the taking was predicated on the facts appearing in this evidence.

Mrs. Daisy Randle, after testifying to these facts, was asked by her counsel: "Q. State to the jury now, Mrs. Randle, taking into consideration the beauty of your place, what would it be worth as a show place—how much is your place worth"—to which, over the objections of the appellant, she answered, "$10,000."

She was then asked: "Q. Since the roadway goes through there like it has—this new road they have condemned—what is your place worth now"—to which she replied, "$4,000.00 for taking all of the beauty and quietness away from the place."

There was no evidence that the property was used as a show place, whatever that may mean, by the appellees, or that any revenue would be derived by its owners from so using it.

It will be observed that Mrs. Randle was not asked what the market value of the place before and after the taking was, but that aside, it is clear that her opinion was based on the irrelevant facts as hereinbefore set forth. Other witnesses for the appellees testified that the difference in the value of the property before and after the

taking was $4,000; one of them putting it at $2,500, but it is clear that their opinion was based on an estimated unique value because of the facts hereinbefore set forth. As to the impairment of the quietude and seclusion of the property, see State Highway Commission v. Chatham et al., 173 Miss. 427, 161 So. 674. A different question relative thereto might be presented, as to which we express no opinion, if the evidence disclosed that the quietude and seclusion of the property was impaired to a greater extent because the highway traversed it than would have been the case had the highway been located adjacent to, but not on, the property.

The construction of the highway will necessitate the building of a fence along each side thereof, the cost of which would properly enter into the market value of the property. Mrs. Randle was asked this question: "Q. State whether or not you had the money, or was financially able to rebuild that fence, when your fence was cut over there,"—to which she replied, "No sir." This evidence should not have been admitted.

Because of the irrelevant facts which entered into the opinion of the appellees' witnesses as to the value of the land, the verdict cannot be permitted. The appellant, however, admits that the appellees are entitled to compensation as damages to the difference between the value of the land before and after the taking, which, according to one of the appellant's witnesses, amounts to $1,000, but, according to another, amounts to $1,200 or $1,300.

If the appellees will enter a remittitur reducing the damages to $1,300, the judgment of the court below will be affirmed; otherwise it will be reversed and remanded.

So ordered.

**McGehee, J.**, delivered the opinion of the court on suggestion of error.

In the opinion rendered on a former day of the term in this cause, the court made the observation that two

different formulas were given the jury for measuring the damages recovered. On suggestion of error appellees contend that the instruction given in their behalf correctly announced the law, and that the appellant cannot complain because of error in its own instruction. This is true, but the decision of the court, as shown by the former opinion, was not based on this conflict in the instructions, but on the fact that after eliminating all of the testimony regarding damages that were fanciful and not recoverable, and other incompetent evidence, the amount of the verdict was excessive.

We are of the opinion that we should adhere to our former decision, and that the suggestion of error should be overruled, since we think that the failure to specifically point out the ground of the objections as to much of the incompetent testimony comes within the exception to the rule announced in the case of Jackson v. State, 163 Miss. 235, 140 So. 683.

Suggestion of error overruled.