PEARL RIVER VALLEY WATER SUPPLY DISTRICT *v.* WOOD

No. 43478 February 22, 1965 172 So. 2d 196

*Watkins, Pyle, Edwards & Ludlam,* Jackson, for appellant.

*Ray, Spivey & Cain,* Canton; *Lee, Moore & Countiss,* Jackson, for appellee.

BRADY, TOM P., J.

The Pearl River Valley Water Supply District, hereinafter referred to as District, on October 18, 1962, filed with the Circuit Clerk of Madison County, Mississippi its application for the condemnation of 113.8 acres, more

or less, situated in Section 6, Township 7 North, Range 3 East owned by the appellee, Mrs. Hazel A. Wood. Before the date fixed by the clerk of the court for the organization of the special court of eminent domain, the appellee, also hereinafter referred to as landowner, filed a petition for writ of prohibition, and a temporary writ of prohibition was issued. While the temporary writ of prohibition was pending, the Madison County Circuit Court, acting upon a stipulation between the parties, entered an agreed order on the 29th day of March, 1963, whereby there was dismissed from the writ of prohibition 31.7 acres of land, more or less, which land was being acquired by conveyance to the United States of America for the relocation of the Natchez Trace Parkway.

Approximately six months had elapsed from the time of the filing of the original application and the entering of the agreed order for dismissal of a portion of the land. Upon the trial covering the 31.7 acres in the special court of eminent domain on May 29 and 30, 1963, the jury rendered a verdict and a judgment was entered thereon in the amount of $35,000. From this judgment the District appealed to the circuit court, where the cause was assigned No. 781 on the docket for trial de novo.

Since it was necessary to acquire the lands for the relocation of the Natchez Trace Parkway, the District, in conformity with Mississippi Code Annotated section 2766 (b) (1956), on June 22, 1963 deposited with the clerk of the court a sum equal to double the amount of the award, and thereupon entered upon the 31.7 acres and began its enormous operations. Appellee sought a trial on the appeal case covering the 31.7 acres at both the June and September 1963 Terms of the Circuit Court of Madison County, but was unsuccessful.

Upon the trial covering the 82.1 acres in the special court of eminent domain, the jury rendered a verdict

in the amount of $78,200 in favor of the landowner, and judgment was entered on March 27, 1964. The appellant appealed this judgment to the Circuit Court of Madison County for trial de novo.

When the two appeals to the circuit court came on for hearing, upon application of the District and upon a stipulation between the parties in the case at bar through their attorneys, they were reconsolidated for trial de novo as one case as originally filed, subject to the conditions of the stipulation agreed upon when appellee consented to the consolidation of the cases upon appellant's motion. Paragraph two of the stipulation is as follows:

"That all rules of evidence pertaining to eminent domain proceedings in trials de novo shall be followed and based on this date, June 1, 1964, and that it is agreed that June 1, 1964 is and shall be the effective date of this taking, and all rules of evidence pertaining to said taking shall be applicable as if this or these cases had never been tried."

In the trial in the circuit court of said county, the jury rendered a verdict in the sum of $103,800. In accordance with the stipulation between the parties that the court should add to the verdict of the jury the interest accrued at the rate of six percent from and after June 2, 1963 on all monies which in its discretion it should be allocated to the 31.7 acres which the District had already taken, the court entered a judgment against the District in the total amount of $105,510. After appellant's motion for a new trial was overruled, appellant appealed from this judgment.

Appellant urges that the court erred as follows:

1. In excluding from the consideration of the jury all evidence of enhancement or diminution in the value of Appellee's land arising after March 19, 1959 from the initiation and construction of the Pearl River Dam and Reservoir project.

2. In excluding from the consideration of the jury all evidence of general benefits or injuries resulting from the use to which the land taken from Appellee is to be put, that are shared by the general public.

3. In refusing to grant the District's Motion for a New Trial or in the alternative to enter a remittitur upon the ground that the verdict of the jury was so excessive and contrary to the weight of the creditable evidence pertaining to due compensation for the value of the property actually taken and damages to the remainder as to evince passion, prejudice and bias on the part of the jury against the District.

4. In various rulings upon the admission and exclusion of evidence as shown by the Record in this case and more particularly pointed out in Brief of Appellant.

5. In refusing to give Instructions for the Petitioner numbered 1, 2, 4 and 6.

The basic position of the appellant is that never in the history of the state has a project involved the acquisition of land of such magnitude in tracts of predominately substantial size, as contrasted to strips of rights of way and similar purposes for a project which was immediately reflected in a pronounced and widespread enhancement in the value of neighboring lands. Because of the magnitude of the project it was necessary that the acquisition of the land be undertaken in stages.

Appellant urges, first, that the project became a reality and the boundaries were determined on March 19, 1959, when the District published notice thereof, including a map showing the property within one quarter mile beyond the three hundred foot sea level contour. Second, with the crystallization of the plans and realistic anticipation of their fulfillment, together with a high degree of speculation, land prices increased exorbitantly. It is the major connection of appellant that due compensation to which appellee is entitled is the full fair market value on the date of trial of her property actually

taken, together with damages to the remainder, excluding therefrom only the general benefits or injuries shared by the general public from the creation of the Pearl River Reservoir; and that the court erred in excluding from the consideration of the jury (in determining due compensation) all evidence of such benefits or injuries and all evidence of enhancement or diminution of comparable sales prices after March 19, 1959, due to the initiation and construction of the reservoir project.

Appellant contends that the testimony of appellee's witnesses was unrealistic and incredible because it was founded upon the unwarranted assumption of a market in the reasonable future for residential tracts into which appellee's land could be divided. Appellant maintains that the witnesses for the appellee based their values upon sales of other land not comparable to subject land as to size, location, utility and other criteria acceptable under standard appraisal procedures, to be specific, the standard market data approach, and the statistical scientific approach. Appellant finally asserts that, regardless of the other errors and contentions, the court's rulings on the admission and exclusion of certain evidence, and its refusal to give certain tendered instructions, constitute prejudicial error and require a reversal of the judgment and the remanding of this cause.

A detailed resume of the prolix facts of this case need not be outlined. The facts heretofore stated in this opinion, together with such facts as require consideration, will be sufficient for the disposition of this suit.

We will first consider interrelated errors one and two together. At the outset, the fact that this entire eminent domain condemnation is of gargantuan proportions, and therefore somewhat unique in Mississippi, does not per se modify or ameliorate in any manner the basic mandates and prerequisites of the Constitution of the State of Mississippi article 3, section 17 (1890) and the statu-

tory legislative requirements. The many interpretations heretofore made by this Court in construing the constitutional and legislative intent are still operating and controlling.

Mississippi Constitution article 3, section 17 provides as follows:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

In passing, there is a vast difference between the provisions of said article 3, section 17 and the applicable part of the United States Constitution amendment V, which we quote: "Nor shall private property be taken for public use, without just compensation."

By enacting Mississippi Code Annotated section 2760 (1956), the legislature prudently prescribed a basic instruction necessary for the determination of the damages recoverable by a landowner in a special eminent domain court, and required the justice of the peace to sign and give it. The legislature implemented our constitutional safeguard, whether the latter be self-executing or not, and sought to insure in eminent domain courts that due and fair compensation would be paid the landowner and, at the same time, the condemnor's rights would not be violated. Our former decisions reflect careful consideration of the basic legislative objectives and safeguards. In Mississippi State Highway Commission v. Hillman, 189 Miss. 850, 866, 198 So. 565, 569 (1940), we said, "the trial court, other than the special eminent domain court, . . . is not restricted to a particular formula when charging the jury thereon. Mississippi State High-

way Comm. v. Reddoch et al., 184 Miss. 302, 186 So. 298; Mississippi State Highway Comm. v. Huff (Miss.), 186 So. 314.''

The appellant vehemently and repeatedly urges that the due compensation to which the appellee is entitled is the full fair market value on the date of the trial of her property actually taken, together with damages to the remainder, excluding therefrom only the general benefits or injuries shared by the general public from the creation of the Pearl River Reservoir; and that the court erred in excluding from the consideration of the jury, in determining due compensation, all evidence of such benefits or injuries and all evidence of enhancement or diminution of comparable sales prices after March 19, 1959, due to the initiation and construction of the reservoir project.

It is apparent, therefore, that appellant contends that March 19, 1959 was the date that the project actually became a reality for the taking of the appellee's land, and furthermore asserts, in effect, that the date the consolidated cases were actually tried in circuit court, namely, June 4, 1964, was the time of the immediate taking, and therefore the appellant should have been permitted to show any enhancement of value to the appellee's land since March 19, 1959, which was brought about solely because of the reservoir project, speculation, et cetera.

 ██ ██ The contention of appellant is legally untenable for two valid reasons. First, the appellant sought and obtained a consolidation of the two cases involving the appellee's land. The appellee had nothing to do with the institution of these two suits, but agreed to the consolidation, thereby relinquishing valuable legal rights. This the appellee had a right to do. The right to contract is a valuable one and parties are at liberty to contract as they will and bind themselves accordingly, provided the contract is not in violation of law, or con-

trary to public policy. It was of benefit to the appellant to consolidate the cases, since only one trial would have to be held, and there would be only one verdict by a jury. This is valuable conservation of time and expense. These same considerations were of benefit to the appellee also, who was relinquishing her right to a second trial by another jury at a different time to a different part of her homestead. The appellant and appellee, the contracting parties, agreed upon certain basic facts essential to the consolidation of the two suits and, under the title of ''Stipulation,'' the parties waived in writing legal contentions which could have been asserted in the trial of the two suits and rights based thereon. The pertinent parts of the stipulation, which do not violate any law and are not against public policy, are as follows:

1) That it is agreed that the cases numbered 781 and 887 in the Circuit Court of Madison County, Mississippi, which were formerly tried as separate cases in the Eminent Domain Court may be consolidated and that an order as presented and agreed upon may be entered by the Court in response to a motion for reconsolidation of the cases as originally filed and which is at this time presented to the Court.

2) That all rules of evidence pertaining to eminent domain proceedings in trials de novo shall be followed and based on this date, June 1, 1964, and that it is agreed that June 1, 1964 is and shall be the effective date of this taking, and all rules of evidence pertaining to said taking shall be applicable as if this or these cases had never been tried.

3) All of said attorneys agree that the Honorable Russell D. Moore III, the presiding Circuit Judge in this case, shall compute interest at the rate of 6% on all monies which he in his discretion computes or in his decision decides is allocated from the damages awarded in this case as owing to the taking of the 31.7 acre tract, which is Cause No. 781 in this

proceeding, and that this interest shall be computed from and after June 22, 1963, and shall be added to any verdict rendered by the jury and made a part of the amount of damages in the judgment of this Court, and all of the attorneys in this case agree that no objection shall be made to this procedure set out in this paragraph at any time from and after the judgment rendered in this cause.

This contractual stipulation was agreed upon, reduced to writing and with the approval of the circuit court was introduced in evidence of their contractual agreement which was and is binding on them. The appellant cannot now contend that March 19, 1959 is the day the project became a reality insofar as the taking of appellee's land and her due compensation therefor are concerned. The stipulation fixes the effective date of the taking as June 1, 1964, and all rules of evidence pertaining to eminent domain proceedings in trials de novo shall be followed and based on this date, June 1, 1964.

The appellant is estopped to assert now that he should be permitted to exclude any enhancement in value to appellee's property due to the reservoir project, prior to June 1, 1964, the exact day which he agreed is the effective date of the taking. It follows, therefore, that whatever enhancement in the value of appellee's land had already accrued on or before June 1, 1964 was admissible for consideration by the jury. The foregoing reason should be sufficient to settle this contention of the appellant but, since there seems to be some confusion as to what is meant by the words of the statute "immediately before the taking," we will present the second valid reason why the appellant's aforesaid contention must fail. March 19, 1959 cannot properly be considered as the date upon which the taking took place. *On March 19, 1959 two preliminary steps were initiated.* These introductory acts were, first, the publication in the Madison County Herald, a newspaper having general circu-

lation in Madison County, of the fact that the appellant was authorized to condemn and acquire lands in Madison and other counties within one quarter of a mile beyond the three hundred foot above level contour. The second act was the placing on exhibit in the supervisor's office in the courthouse a map showing the contemplated boundaries and the lands within the authorized limits. Appellant, who also urges that this publication constitutes notice to appellee, stated that a determination had not been made and cannot be made until all engineering studies are completed as to where the boundary lines will be finally located, and the general public will be best served by full knowledge and disclosure from time to time of that which is being done by the District.

■■■ Insofar as being binding upon the appellee is concerned, the publication fails to constitute notice, because it was not binding on the appellant. The appellant was free to alter or change the amount of lands to be taken, and the location thereof, and the appellee could not, with any degree of certainty, ascertain how much or what part of her homestead would be taken. Actually, material changes in the project were made, and the dam as primarily surveyed was moved and relocated on another map approximately one mile further north than is reflected in the original map exhibited in the board of supervisors' office. Obviously the District was not bound by the alleged "notice." What is the act which does give due and binding notice upon the landowner and also the condemnor? It is the institution of the suit in the special court of eminent domain. This is the date of the taking. It is the value of the land immediately before this date which the statute contemplates will constitute the "before the taking" computation.

Appellant contends, in substance, that since appellee knew on March 19, 1959 that the lands were probably within the scope of the project at the time appellant

published its notice, she therefore was not entitled to any enhancement in value because of the institution of the project. A solution of this question is not necessary for the determination of this case and we do not decide this issue. The notice is too uncertain, without sufficient binding effect upon the condemnor, and inconclusive in its actual condemnation description, to constitute legal notice to the appellee. Therefore, if the appellant had not agreed and stipulated that June 1, 1964 was the date of the taking, a day almost two years subsequent to the date of the institution of the eminent domain suit on October 18, 1962, the latter date would have constituted the date of this taking, but certainly not March 19, 1959, the date of the publication of the District's authorization and contemplated condemnation.

Turning to the errors relating to the trial court's admission or exclusion of evidence, the alleged unrealistic and incredible testimony of the appellee's witnesses, urged by the appellant, for the reason that it was based upon the unwarranted assumption of a market in the reasonable future for residential tracts into which appellee's land could be divided, finally because the values placed on land sales testified to by the appellee's witnesses were not comparable to the subject land as to size, location and utility, we will simply point out that these and other questions relating to the determination of the question of fair market value, damages and due compensation and the difficult question of relevancy and irrelevancy of evidence have been repeatedly considered by this Court, and in our former decisions we have pointed out that "land has no market value, in the sense that stocks, bonds, and other public securities have a market value, or even as the common and ordinary articles of commerce have such market value; and because thereof the rules of evidence for the proof of the value of the land are modified to meet the circumstances of the situation." Board of Levee Commission-

ers v. Dillard, 76 Miss. 641, 650, 25 So. 292, 294 (1899). See also Mississippi State Highway Commission v. Roche, 249 Miss. 792, 163 So. 2d 874 (Miss.); Mississippi State Highway Commission v. Brooks, 239 Miss. 308, 317, 123 So. 2d 423 (1960); State Highway Commission v. Brown, 176 Miss. 23, 168 So. 277 (1936); 29 C.J.S. *Eminent Domain* section 160, at 1026, 1027 (1941).

 We likewise pointed out that: "It would be impossible, and is wholly unnecessary, for us to here discuss the modifications of the general rules of evidence as to market value of land." Mississippi State Highway Commission v. Hillman, 189 Miss. 850, 869, 198 So. 565 (1940). The wisdom of that decision has stood the test of time and is still the clearest pronouncement and solution of the basic issues present in an eminent domain case. While it is not necessary to pass upon other evidentiary matters assigned as errors in the case at bar because this case must be reversed for other reasons, nevertheless we will consider those errors assigned which may arise on the retrial of this cause. Fundamentally it should be kept in mind that a witness cannot do, in giving his testimony, what a jury cannot do in rendering its verdict. Mississippi State Highway Comm'n v. Hillman, 189 Miss. 850, 198 So. 565 (1940); State Highway Comm'n v. Buchanan, 175 Miss. 157, 165 So. 795, 166 So. 537 (1936); Lewis, Eminent Domain section 706 (3d ed. 1909).

We have repeatedly held that expenses reasonably necessary in the use and enjoyment of the remaining land after the taking of a part of the land could be shown and could be considered by the jury in determining the market value of the land, but not as constituting separate items of damage. Likewise, inconvenience and whether it could have been removed at a reasonable expense was a fact to be considered by the jury in fixing the market value of the land remaining after the taking of a part thereof, but not as a separate item of damage. Mis-

sissippi State Highway Comm'n v. Williamson, 181 Miss. 399, 179 So. 736 (1938); Harrell v. Miller, 35 Miss. 700, 72 Am. Dec. 154 (1858). We pointed out that damages cannot be pyramided. State Highway Comm'n v. Day, 181 Miss. 708, 180 So. 794 (1938); that the evidence of damages cannot be uncertain, remote and speculative, as was pointed out in State Highway Comm'n v. Brown, 176 Miss. 23, 168 So. 277 (1936).

We have in former decisions recognized the rule that a witness does not have to be a certified public appraiser or an expert in the fields of appraisal or real estate merchandising in order to testify as to land values. A witness need not have actually bought and sold land adjacent to or in the immediate neighborhood of the land in question; he need not use the highly specialized and modern standard market data approach, or comparison, to deal with control areas and be able to plot median prices. Laymen can testify as to the value of a condemnee's land provided they are familiar with it before and after the taking thereof, and are cognizant of land values of comparable property as to quality, use and location, which is adjacent, near or reasonably close to the subject land so that the same comparisons, favorable or unfavorable, can be fairly made, based upon sales they have made or about which they have direct personal knowledge. Mississippi State Highway Comm'n v. Rogers, 240 Miss. 529, 542, 128 So. 2d 353 (1961).

We pointed out in Mississippi Highway Commission v. Strong, 240 Miss. 756, 763, 129 So. 2d 349 (1961) that: "The witnesses introduced to prove the value of the property are sometimes called expert witnesses, but this is a misnomer, for no peculiar ability or specialized training is required to testify as to the market value of property. It is expressed by the text writer in 18 Am. Jur., Eminent Domain, Sec. 355, p. 1000, as follows: 'It is, of course, proper to determine the quali-

fications of such witnesses before their testimony as to value is received. It will not be presumed that a witness is competent to give an opinion, but it must be shown that he has some peculiar means of forming an intelligent, correct judgment as to the value of the property in question or the effect upon it by a particular improvement, beyond what is possessed by men generally. It is apparent that the opinion of a witness should not be admitted where it appears that his opportunity for knowledge concerning the land was slight or that his knowledge was remote in point of time.' "

We also pointed out in the Strong case, *supra,* citing therein "City of Chicago v. City Ry. Co., 309 Ill. 488, 141 N.E. 141, *** Real estate dealers and brokers are, however, likely to have greater familiarity with land values, and they constitute perhaps the larger part of the class of value witnesses." 240 Miss. at 764. This does not preclude or evaluate the testimony of lay or expert witnesses. Mississippi State Highway Comm'n v. Stout, 242 Miss. 208, 224, 225, 134 So. 2d 467 (1961); Warren County v. Harris, 211 Miss. 80, 50 So. 2d 918 (1951); Robinson v. McShane, 163 Miss. 626, 140 So. 725 (1932); Louisville, New Orleans & Texas Ry. Co. v. Whitehead, 71 Miss. 451, 15 So. 890 (1893).

 █ Competence and relevancy of testimony are a far cry from credibility and weight and are not to be confused therewith. The former presents a question of law, while the latter is a question of fact for the jury.

 The land with which the subject land is being compared does not have to be of the same size or acreage, or approximately so, if the other criteria essential to a fair comparison are present, for to hold otherwise would make it almost impossible to find a comparable tract of land or a sale which could be used as a means of evaluating the fair market value or due compensation. The appellant should have been permitted to inquire fully of the witness as to the present demand

or need for the land for the particular use which the witness considered to be the highest and best use of the land which he was valuing. This was essential because of the rule with reference to the necessity of showing with reasonable probability that the land will be put to such use within the immediate future or within a reasonable time, as has been pointed out in Mississippi State Highway Comm'n v. Brooks, 239 Miss. 308, 123 So. 2d 423 (1960); State Highway Comm'n v. Brown, 176 Miss. 23, 168 So. 277, 279, 280 (1936); 4 Nichols, Eminent Domain section 12.314, at 140-152 (3d ed. 1962).

We do not have to pass upon the error assigned that the verdict of the jury is so excessive and contrary to the weight of the credible evidence pertaining to due compensation for the value of the property actually taken and damages to the remainder as to evince passion, prejudice and bias on the part of the jury against the District.

It is to the instructions denied the appellant that we direct ourselves. We find no error in the refusing of instructions 1 and 2 for the appellant. These two instructions in substance charged the jury that in reaching its verdict if it should find the defendant's lands were within the scope of the project, it should not consider any increase or enhancement in the value of defendant's lands due to the initiation and construction of the project and arising after March 19, 1959. We have hereinabove pointed out that the publication of March 19, 1959 did not constitute the date of the taking of the appellee's land, and irrespective thereof the parties to this lawsuit had agreed and stipulated in writing that the date of taking was June 1, 1964.

The error committed by the learned judge consists in refusing to grant the appellant its instruction No. 4, which is as follows:

The Court instructs the Jury that the defendants are entitled to the difference between the fair market

value of the entire 135.6 acres, more or less, owned by defendant, immediately before the taking, and the fair market value of the 21.8 acres, more or less, remaining immediately after the taking, without considering general benefits or injuries resulting from the use to which the land taken is to be put, that are shared by the general public.

■■ As to form, the instruction is perfect, and has been used innumerable times in eminent domain cases. The error may have been committed under the fallacious assurance or belief on the part of the court and counsel representing both sides that instruction No. 2 granted the appellee was sufficient also to instruct the jury insofar as the rights of the appellant were concerned. Regardless of the cause of the error, we will once again endeavor to point out what has been so clearly designated before in the Hillman case, *supra,* and in many other decisions subsequent thereto.

■■ The word which requires our closest consideration is the word "immediately," which is found in appellant's instruction No. 4. Volume V of the Oxford English Dictionary at page 63 (1933), among others, gives the following definition:

*Immediately*:

1. Without intermediary, intervening agency, or medium; by direct agency; in direct or proximate connection or relation; so as to concern, interest, or affect directly, or intimately; directly.
2. With no person, thing, or distance intervening, in time, place, order, or succession; next or just preceding or following, before or after; closely; proximately; directly.
3. Without any delay or lapse of time; instantly, directly, straightway; at once.

It is apparent that even the most liberal interpretation of the word "immediately" (before the taking) cannot

be construed to mean March 19, 1959, some three years prior to the date the eminent domain suit was actually filed, which in essence and effect is what appellant contends the word "immediately" means.

The appellee urges that instructions 4 and 6 were properly refused because they were based upon the theory that the appellee was entitled to the present value of her property less any benefits arising after the alleged notice which appellant claims to have given the appellee. After a close examination, which appellee urges, we fail to find any implication or connotation, such as the appellee asserts, to be embodied in the instructions. There is nothing in this instruction which infers that the day of the publication of March 19, 1959 is to be considered or used by the jury in determining the value immediately before and after the taking.

Appellant's instruction No. 4, the veteran of countless legal affrays, still stands unvanquished. The appellee further urges that the normal instructions which were given in the Hillman case, *supra,* and in Mississippi State Highway Commission v. Stout, 242 Miss. 208, 134 So. 2d 467 (1961) are not in conformity with appellant's instructions 4 and 6. There is no merit in this exhortation of appellee.

Once again we point out that we stated in the Hillman case, *supra,* as follows: "There is a conflict in the authorities *elsewhere* as to whether the formula now to be stated for measuring the compensation to be awarded an owner in an eminent domain proceeding, when a part of his land is taken for public use, embraces all the elements hereinbefore set forth that should enter into the determination thereof. This Court holds that it does. That formula is: When part of a larger tract of land is taken for public use, the owner should be awarded the difference between the fair market value of the whole tract immediately before the taking, and the fair market value of that remaining immediately

after the taking, without considering general benefits or injuries resulting from the use to which the land taken is to be put, that are shared by the general public. Sullivan v. Board of Supervisors, etc., 61 Miss. 271; Balfour v. Louisville, N. O. & T. R. Co., 62 Miss. 508; City of Meridian v. Higgins, 81 Miss. 376, 33 So. 1; Warren County v. Rand, 88 Miss. 395, 40 So. 481; Schlicht v. Clark, 114 Miss. 354, 75 So. 130; Mississippi State Highway Dept. v. Blackburn, 172 Miss. 554, 160 So. 73; State Highway Comm. v. Chatham, 173 Miss. 427, 161 So. 674; State Highway Comm. v. Corley, 186 Miss. 437, 191 So. 119; Mississippi State Highway Comm. v. Williamson, 181 Miss. 399, 179 So. 736; State Highway Comm. v. Day, 181 Miss. 708, 718, 180 So. 794; Mississippi State Highway Comm. v. Prewitt, 186 Miss. 778, 192 So. 11; Mississippi State Highway Comm. v. Smith (Miss.), 192 So. 448; State Highway Comm. v. Brown, 176 Miss. 23, 33, 168 So. 277.'' 189 Miss. at 866. (Emphasis ours.)

We also pointed out in the Hillman case, *supra*: ''None of these cases state this formula in its entirety, but it is manifest from its opinions that this Court has not understood any of them as excluding any of the elements that enter into determining the compensation to be awarded the landowner that are embraced in the formula as hereinbefore set out.'' 189 Miss. at 866.

We likewise recognized that: ''There are exceptional cases (which is not true in the case at bar) to which this before and after taking rule is not applicable. Richardson v. Board of Levee Commissioners, 68 Miss. 539, 9 So. 351.''

The case at bar not falling within the exceptional case rule, it follows that the two instructions should have been given the appellant; at least, instruction No. 4 should have been given, since the appellee asked for and received one of the instructions of the formula, namely, instruction No. 2, which is as follows:

The Court instructs the jury for the defendant as follows: The defendant is entitled to recover damages in this Cause, and it devolves upon your honesty and impartiality to estimate the sum thereof according to the evidence adduced in the trial, the weight and credibility of which you are the sole judges. The defendant is entitled to due compensation, not only for the value of the property to be actually taken as specified in the application, but also for damages, if any, which may result to her as a consequences of the taking; and you are not to deduct therefrom anything on account of the supposed benefits incident to the public use for which the application is made.

This instruction obtained by the appellee is a verbatim et literatim copy of the instruction required by Mississippi Code Annotated section 2760 (1956), *supra,* to be used in a special eminent domain court, and deals solely with one part of the formula for determining due compensation, which is that part which relates to any damages resulting to appellee as a consequence of the taking, together with the value of the property actually taken.

██ ██ We succinctly pointed out in the Hillman case that the two instructions involved in the determination of due compensation do not " 'state two different and distinct formulas for measuring damages.' *The before and after taking instruction simply sets forth a formula for arriving at the damages which the other instruction directs the jury to award the appellees. Cf.* Mississippi State Highway Comm. v. Randle, 180 Miss. 834, 839, 178 So. 486, 179 So. 273." 189 Miss. at 867. (Emphasis ours.)

The appellant was therefore denied, by the refusal of its instruction No. 4, the right to set forth the corollary formula to aid the jury in measuring the damages due to a landowner caused by the taking of a portion of his land which the law requires to be awarded under the other instructions, including the statutory instruction

set out in Mississippi Code Annotated section 2760 (1956).

Regardless of the grounds urged, the appellee's instruction No. 2, a prerequisite in eminent domain proceedings on the county level, does not supply the essential part of the formula to which the appellant is entitled. The appellant in the case at bar was required to present its case to the jury with only this instruction given:

The Court instructs the Jury that if nine (9) or more jurors shall agree upon the verdict in this case, the same may be returned as the verdict of the Jury.

The testimony which was presented to the jury related to the difference between the values before and after the taking, and the jury should have been instructed for the appellant in accordance with its instruction No. 4 in order to apply the testimony to the formula.

In conclusion, this case was assiduously and fervently tried. It is regrettable that it must again be tried, but the refusing of appellant's instruction No. 4 constitutes reversible error, and for the reasons hereinabove given, the judgment is reversed and the cause remanded.

On a retrial of this cause, the other potential errors which have been indicated can be avoided.

Reversed and remanded.

*Kyle, P. J., and Gillespie, Rodgers and Jones, JJ.,* concur.