PEARL RIVER VALLEY WATER SUPPLY DISTRICT *v.*
BROWN, et al.

No. 43854 January 31, 1966 182 So. 2d 384

March 21, 1966 184 So. 2d 407

*John H. Stennis, Watkins, Pyle, Edwards & Ludlam,* Jackson, for appellant.

*Dan M. Lee, W. D. Coleman,* Jackson; *Boyd, Holifield & Harper,* Laurel, for appellees.

RODGERS, J.

The Pearl River Valley Water Supply District (hereafter called District) was organized under Chapter 197, Mississippi Laws 1958, for the purpose of construction and development of a water reservoir, and the authority to acquire by eminent domain proceedings the land necessary for the construction and protection of the reservoir. On June 13, 1962, the District filed petitions in the Special Court of Eminent Domain in Madison County, Mississippi, to acquire for public use seven parcels of land. Two of these parcels of land containing five acres each designated as ''Tracts I and J'' were owned by Mrs. Amie Brown. The remaining five tracts, ''A, B, C, D and E'' composing 204.1 acres were owned by Floyd T. Brown. It appears that originally four suits were brought by the District, in which separate trials, verdicts and judgments were had to acquire 630.2 acres belonging to various members of the Brown family, but which were operated as one farm unit, and leased by Mrs. Amie Brown and J. Leland Brown. Appeals were instituted in all of these suits, but judgments were entered here November 22, 1965, dismissing No. 43,758 styled Pearl River Valley Water Supply District v. F. Stanton Brown, and No. 43,759 styled Pearl River Valley Water Supply District v. J. Leland Brown and Mrs. Amie Brown.

After the suits were filed to acquire the property belonging to the Brown family, the appellees here filed

petitions for writs of prohibition to stay the eminent domain proceedings. This application was settled adversely to petitioners on appeal to this Court in May 1963. In the two cases now before the Court, the proceedings resulted in a judgment in the eminent domain court in favor of Mrs. Amie Brown in the sum of $6,000 and for Floyd T. Brown in the sum of $80,000. The District appealed to the circuit court where the cases were consolidated and tried in October 1964, resulting in a verdict in favor of Mrs. Amie Brown in the sum of $8,000, and a verdict in favor of Floyd T. Brown in the sum of $122,500.

The District has appealed from the judgments of the circuit court, and contends: First, that the trial court erred in excluding from the jury all evidence of enhancement or diminution in the value of the land arising after June 13, 1962, attributable to the construction of the Reservoir Project. Second, it is said that the court granted an erroneous instruction. Third, that the verdict of the jury was so excessive and unreasonable, and so contrary to the weight of the credible evidence, as to show bias and prejudice on the part of the jury and to shock the enlightened judicial conscience.

 ██ The appellant argues that the District should have been permitted to have introduced evidence showing the increase in value of the land because of the construction of the reservoir after the date when it filed the eminent domain proceedings. The District points out the rule that, in eminent domain proceedings, damages are assessed and compensation determined as of the time of taking, but general benefits and injuries resulting from the use to which the land is to be put, and which are shared by the general public, are not to be considered in awarding damages. ██ We agree that this is the rule. Miss. Highway Comm'n v. Stout, 242 Miss. 208, 134 So. 2d 467 (1961); Miss. State Highway Comm'n v. Hillman, 189 Miss. 850, 198 So. 565

(1940). We also agree that the time of taking for the purpose of determining due compensation is the date of the institution of the eminent domain suit. Pearl River Valley Water Supply Dist. v. Wood, 252 Miss. 580, 172 So. 2d 196 (1965) ; Miss. State Highway Comm'n v. Hemphill, 253 Miss. 507, 176 So. 2d 282 (1965).

The agency exercising the extraordinary power of eminent domain cannot complain that the property has increased in value because of a proposed public project, until it actually files a petition to take the land by eminent domain proceedings. The problem we have encountered on this point is, not so much the rule as in finding testimony offered by appellant to show the increased value of the land because of the construction of the reservoir after the date of the institution of eminent domain proceedings.

The record shows that appellant offered testimony of an expert witness to show that land values in the reservoir area had increased from the time the District had put a notice in a local newspaper on March 19, 1959; that the witness had made a study and an analysis of land sales of a similar block of land on Pearl River so that he could, by comparison show the increase in value of the land in the reservoir area month by month. This evidence revealed a study by the witness, from January 1, 1950, through May 15, 1964, and establishes a ''median'' price.

The trial court did not have the benefit of our holding in Pearl River Valley Water Supply District v. Wood, 252 Miss. 580, 172 So. 2d 196, (1965), when the instant case was tried in the circuit court in October 1964. The appellant, District, contended during the trial that the value of the land should be established at the beginning of the project in 1959 so as to exclude the increased value of the land since that time, which it contended, was a benefit, or increased value, resulting from the construction of the reservoir.

■■ ■ We are of the opinion that the trial court was not in error in refusing to permit the introduction of this evidence, because it was based upon the valuation of 1959, and not based upon the date of the taking on June 13, 1962. We do not hold, however, that this method of determining market value at the time of the taking (by the comparison of land sales in a nearby similar area) is not admissible in evidence when it does show the market value of the land at the time of the taking.

■■ ■ Neither do we think the court committed error in refusing to permit expert land appraisal witnesses for the appellant to give testimony on cross-examination as to the market value of the land, ''excluding therefrom the general benefits and injuries shared by the general public from the creation of the Pearl River Reservoir.'' The value test does not begin from the creation of the reservoir but rather from the date of taking. Miss. State Highway Comm'n v. Hemphill, 253 Miss. 507, 176 So. 2d 282 (1965); Pearl River Valley Water Supply Dist. v. Wood, 252 Miss. 580, 172 So. 2d 196 (1965). Enhancement in value of the land prior to the taking may be shown and claimed by the landowner. Increased value of the land after the taking may be shown by the state agency to prove the value of the land at the date of the filing of the eminent domain proceedings, without regard to the injuries or benefits shared by the general public resulting from the use to which the land is to be put. Miss. State Highway Comm'n v. Stout, 242 Miss. 208, 134 So. 2d 467 (1961). Cf. Miss. State Highway Comm'n v. Taylor, 237 Miss. 847, 116 So. 2d 757 (1959).

■■ ■ The appellant complains that an instruction granted to the defendants is erroneous because it embodies the clause ''and you are not to deduct therefrom anything on account of supposed benefits incident to the public use for which the application is made.'' It is contended that the instruction was taken from a clause found in Mississippi Annotated Code section 2750

(1956), and that the clause only relates to and modifies the phrase "but also for damages, if any, which may result to him as a consequence of the taking." It is said that the clause only refers to a partial taking and is not applicable here because all of the land belonging to defendants was acquired. A careful study of the foregoing code section will show that the clause set out in the instruction is applicable, whether a part or all of the property of a landowner is acquired for public use.

Moreover, since the date of the filing of the eminent domain proceeding is the date when the fair market value of the property is to be determined, the landowner is not entitled to the increased value of the property after that date. He is then entitled to the value of the land acquired.

The instruction would have been correct if the jury had been properly informed of the date when the fair market value was to have been determined.

 █ We do not, therefore, find any merit in the first two assignments of error above set out and presented on this appeal, but the final assignment of error is well-taken and requires a reversal of this case. Appellant contends the verdicts of the jury were so excessive as to indicate bias and prejudice on the part of the jury.

The District offered testimony to show that the land taken was good, ordinary rolling land, with scattered trees. Some was used principally for cattle grazing, some for farming, and a small part was submarginal. The major portion of the land is below contour 298 feet above sea level, and was subject to overflowing from Pearl River. There were a few improvements. The property is located approximately fourteen miles from Jackson, Mississippi near the Natchez Trace. It is about twelve miles from the Town of Madison and about eight miles from the courthouse in Canton. The

appraisal witnesses for the District testified that the best and most valuable use to which the property is adapted, is for farming and grazing cattle. Appellant offered comparable sales of farm property near the property here sought to be acquired to show the market price of land in the area.

On the other hand, the appraisal witnesses for defendants testified that the highest and best use for the land sought to be acquired was for residential, commercial or industrial purposes. They testified that the two five-acre tracts belonging to Mrs. Amie Brown were ideal residential sites. All of the witnesses for defendants discounted the fact that six tracts of land here involved had no outlet to a public road. This opinion was based upon the theory that these defendants could obtain right-of-way easements across lands belonging to other members of the Brown family. This theory overlooks the rule that the value of the land to be determined is the fair market value others would pay for the land without easement or right-of-way outlets across other lands.

The appraisal witnesses offered by litigants testified to the following valuations of the lands sought to be acquired:

| APPELLANT'S WITNESSES | FLOYD T. BROWN TRACT | MRS. AMIE BROWN TRACT |
|---|---|---|
| Lee Henry Cotton | $ 37,500.00 | $ 1,400.00 |
| W. Merle Mann | 41,500.00 | 3,000.00 |
| Gus Noble | 36,775.00 | 1,750.00 |
| APPELLEE'S WITNESSES | | |
| C. C. Coats | $118,000.00 | $ 7,000.00 |
| J. H. Wells | 175,440.00 | 11,250.00 |
| Lewis Culley | 178,000.00 | 11,250.00 |

Thus it is seen that the witnesses for the landowners testified the property was worth more than four times as much as appellant's witnesses. The jury returned

verdicts for almost three times the highest value placed upon the land by appellant's witnesses.

We are of the opinion that the verdicts returned by the jury are excessive and unreasonable for the following reasons. First, the entire case was submitted to the jury on the theory that it was required to return verdicts determining the value of the land sought to be acquired as of the day of the trial. This was error. The value of the land on the day of the trial necessarily included enhanced value, growing out of the construction of the reservoir. The jury should have been permitted to fix the value of the land on the date when the proceedings were filed in the eminent domain court, namely *June 13, 1962*. Pearl River Valley Water Supply Dist. v. Wood, 252 Miss. 580, 172 So. 2d 196 (1965); Miss. State Highway Comm'n v. Hemphill, 253 Miss. 507, 176 So. 2d 282 (1965). Second, the testimony offered by witnesses for the appellees to the effect that the land sought to be acquired — located in the lowlands, adjacent to the Pearl River swamp, many miles from municipal subdivisions, without any public utilities, and without any immediate or foreseeable need for the property as such — should be divided into industrial and residential lots (to say the least) is, speculative and fanciful thinking.

In Mississippi State Highway Commission v. Brooks, 239 Miss. 308, 316-17, 123 So. 2d 423, 427 (1960) we said

"the present value of land sought to be condemned in eminent domain proceedings is not to be estimated simply with reference to the condition in which the owner has maintained it or for the use to which it is at the time applied, but with reference to any use to which it is adapted. The best or most valuable use to which the property, which is taken for the public use, is adapted should be considered. 29 C. J. S. Eminent Domain § 160, p. 1024, and cases cited. 'Mere

speculative uses cannot be considered. There must be some probability that the land would be used within a reasonable time for the particular use to which it is adapted. * * * There must be a present demand for the land for such purpose or a reasonable expectation of such demand in the near future.' 29 C. J. S. Eminent Domain § 160, pp. 1026, 1027. See also State Highway Commission v. Brown, 176 Miss. 23, 168 So. 277.''

In that case, however, the record revealed that the land sought to be acquired ''lies immediately adjacent to the western boundary line of the City of Hattiesburg, a city of approximately 34,000 population.'' 239 Miss. 317, 123 So. 2d at 427.

■■ ■ The rule of evidence that the jury may consider not only the value of the land as it is presently used by the owner, but also the possibility of its use for other purposes is subject to the qualification that possibilities which are so remote and speculative as to require prospective occurrence of many extrinsic conditions and happenings that have no perceptible effect upon the present market value of the land, should be excluded from the jury.

It has been said:

''To warrant admission of testimony as to the value for purposes other than that to which the land is being put, or to which its use is limited by ordinance at the time of the taking, the landowner must first show: (1) that the property is adaptable to the other use, (2) that it is reasonably probable that it will be put to the other use within the immediate future, or within a reasonable time, (3) that the market value of the land has been enhanced by the other use for which it is adaptable. . . .''

Nichols, *Eminent Domain* (3rd ed.) § 12.314 at 148-52 (1962).

This rule was applied in the following cases: Miss. Highway Comm'n v. Rogers, 236 Miss. 800, 112 So. 2d 250 (1959); Harper v. Miss. State Highway Comm'n, 216 Miss. 321, 62 So. 2d 375 (1953); State Highway Comm'n v. Brown, 176 Miss. 23, 168 So. 277 (1936).

We said in Green Acres Memorial Park, Inc. v. Mississippi State Highway Commission, 246 Miss. 855, 861-62, 153 So. 2d 286, 288-89 (1963) that

"When the whole property is taken, the damage is the fair market value of the property. . . . Market value means the fair cash, market value as between one who wants to purchase and one who wants to sell, or the amount for which it would actually sell at the time (not what it might bring or ought to bring at some future time.)"

We pointed out in Mississippi State Highway Commission v. Pepper, 250 Miss. 347, 164 So. 2d 911 (1964), that before testimony is admissible to show sales of residential or commercial property comparable to the property sought to be condemned, the testimony must first show that the land sought to be condemned might be reasonably expected to be in present demand for such use.

We are of the opinion that the evidence did not show an immediate need or demand for the property here involved for use either as industrial or residential lots, and the introduction of evidence to show the value of the property for such use was unwarranted.

 Finally, the effort of Mr. Lewis Culley, Sr. to persuade the jury that the landowners around the reservoir were not obtaining sufficient damages for the land being condemned, and his stated objection to the reservoir, that it was taking land not necessary for the use of the reservoir but for the purpose of leasing or reselling the land to others, was highly prejudicial. Although an objection was sustained to this evidence, we

are of the opinion that it goes far to show why the jury returned verdicts which we believe are excessive.

We pointed out in Mississippi State Highway Commission v. Valentine, 239 Miss. 890, 896, 124 So. 2d 690, 693 (1960), that ''A proper exercise of the judicial function does not require us to believe the incredible. . . .'' Cf. Miss. State Highway Comm'n v. Taylor, 237 Miss. 847, 116 So. 2d 757 (1959).

We have reached the conclusion that the verdicts returned by the jury in this case are so grossly excessive as to evince bias, passion and prejudice on the part of the jury, and for that reason the judgments entered in the trial court are reversed.

Inasmuch as the jury was not permitted to fix the value of the property sought to be condemned, as of the date when the proceedings were instituted, we are unable to suggest a remittitur.

Reversed and remanded.

*Ethridge, C. J., and Brady, Smith and Robertson, JJ.,* concur.

## ON MOTION OF APPELLEES TO RETAX COST OF APPEAL.

Rodgers, J.

 On January 31, 1966, this Court handed down its opinion reversing the judgment of the trial court in an eminent domain proceeding, for the reason that the verdict of the jury was excessive. We were precluded from suggesting a remittitur because the jury was not permitted to assess the value of the property as of the date when the application was filed. Since, therefore, the jury had not fixed the value of the property, this Court could not suggest a reduction of the verdict in the form of a remittitur of damages allowed appellants.

The Clerk of this Court entered a judgment against the appellees for the cost of appeal to this Court. The act of the Clerk was obviously based upon a previous

opinion of this Court, Mississippi State Highway Commission v. Jacobs, 248 Miss. 476, 482, 161 So. 2d 526 (1964). In that case this Court pointed out that in Mississippi State Highway Commission v. Herring, 241 Miss. 729, 133 So. 2d 279, 895 (1961), and Mississippi State Highway Commission v. Slade, 241 Miss. 721, 133 So. 2d 282, 896 (1961), the appellant, Mississippi State Highway Commission, was required to pay the costs on appeal where the judgments of the trial court were affirmed with remittiturs. In *Jacobs*, however, no judgment was entered. The case was reversed because the landowner introduced erroneous testimony and the cost was taxed against him. The opinion in *Jacobs* is not applicable under the facts in the instant case for the following reasons. *Jacobs* was not an eminent domain proceeding, it was a suit brought by the landowner for damages alleged to have been inflicted upon the plaintiff because of closing an alley. The assessment of cost in *Jacobs* was governed by Mississippi Code Annotated section 1902 (1956).

On the other hand, there is no code section governing payment of costs of an appeal to the Supreme Court in an eminent domain proceeding. Mississippi Code Annotated section 2767 (1956) applies to appeals to the circuit court, and not the Supreme Court. This section is in the following language: "The costs in all cases under this chapter shall be paid by the applicant; but in case of appeal by the owner, if the amount awarded in the circuit court do not exceed that found in the special court, the owner and his sureties shall pay the costs incident to the appeal."

Thus it is apparent that the cost of appeal to the Supreme Court would ordinarily be governed by the general laws in civil cases. At this point, however, we are confronted with a self-executing section of Mississippi Constitution 1890 section 17, which requires that "Private property shall not be taken or damaged for

public use, except on due compensation being first made to the owner or owners. . . ."

 It is obvious that if the landowner is required to pay the costs of appeal to the Supreme Court when the condemning agency has appealed, the owner will be paid less than due compensation for his property. Moreover, he would be required to pay costs before he could receive any compensation for his property, and if he could not pay the costs, he would receive nothing for his property. The constitutional requirement would thereby be nullified. The great weight of the general law is to the effect that the owner should receive his just compensation clear of any expense of the proceedings. He is presumptively entitled to the amount of the first award. His acts do not force the condemning party to appeal, and, if such party chooses to appeal, the appeal becomes merely another step in the process of ascertaining the just compensation, the total expense of which it should bear.

The textwriter in 18 Am. Jur. *Eminent Domain* section 378 at page 1020 (1938) has this to say on the subject:

"In proceedings for the appropriation of land to the public use, the owners of the land are entitled to full compensation, without deduction for any part of the costs incurred in the ascertainment of the amount. These must be borne by the party seeking to take the property, in whatever court it institutes proceedings for that purpose. If, dissatisfied with the assessment, the condemner seeks to reduce the amount by an appeal to another tribunal, such appeal is but a continuation of his effort to have the compensation to be paid the owner for his property ascertained, and his costs on such appeal are in the same category as costs in the trial court. The usual provisions of statutes in regard to costs on appeals to the supreme court cannot be applied to cases of this kind, because

to do so would deprive the owner of his constitutional right to full compensation for his land.''

It is said in 30 C. J. S. *Eminent Domain* section 445 at page 599 (1965):

''The rules regulating costs in civil actions and proceedings in general ordinarily apply in an action or proceeding by an owner with respect to property taken or damaged under an exercise of the power of eminent domain. It has been held that costs constitute a part of the just compensation to which the owner becomes entitled on obtaining a judgment against the taker, including costs incurred by him in fruitless endeavors to collect his award in the condemnation proceedings.''

See also 20 C. J. *Eminent Domain* section 507 at page 1133 (1920).

It is pointed out by the textwriter in Annotation, 50 A. L. R. 2d at 1391 (1956) that Mississippi has aligned itself with the majority rule in the case of State Highway Commission v. Mason, 192 Miss. 576, 4 So. 2d 345 (1941), 6 So. 2d 468 (1942).

In *Mason* this Court leaves no room for doubt as to who will be required to pay the costs of court on appeal in eminent domain proceedings, wherein the Court said:

''And whatever diversity of opinion there may be in some jurisdictions, we align ourselves with those cases which hold, in support of the text 2 Lewis Eminent Doman, 3rd Ed. § 812, p. 1434, that as property cannot be taken or damaged without due compensation and as the amount of that compensation or for its damage must be ascertained, the duty of ascertaining the amount is necessarily cast upon the party seeking to condemn or who has damaged the property for public use, and that he or it should pay all the expenses which attach to the process; that there is not the full measure of due compensation required by the constitutional mandate if the owner is subjected to a diminu-

tion thereof by liability as to any part of the cost incurred in its ascertainment.'' 192 Miss. at 597, 6 So. 2d at 469.

We have consistently followed *Mason* since the rule was established in that case. See Miss. State Highway Comm'n v. Peterson, 242 Miss. 202, 134 So. 2d 743 (1961); Miss. State Highway Comm'n v. Herring, 241 Miss. 729, 133 So. 2d 895 (1961); Miss. State Highway Comm'n v. Slade, 241 Miss. 721, 133 So. 2d 896 (1961).

 The motion of the appellees to retax the costs is hereby sustained, and the judgment in the above-styled cause will be corrected so as to require the condemner, Pearl River Valley Water Supply District, to pay the costs incurred in the Supreme Court on its appeal.

Motion to correct judgment sustained.

All Justices concur.