Jackson Municipal Airport Authority has appealed from a decree of the Chancery Court of the First Judicial District of Hinds County awarding to Mrs. Bessie Bradshaw Wright, Charles M. Wright, Charles H. Wright and Celeste Fullilove Wright, appellees, the sum of $25,602 as compensation for the taking for public use of an air navigation easement "in the air space superadjacent" to their lands.
Jackson Municipal Airport Authority was created by the City of Jackson pursuant to the provisions of Mississippi Code 1942 Annotated section 7545-32 (1956) and is a public body corporate, possessing the right of eminent domain. It operates the Jackson Municipal Airport (Allen C. Thompson Field) located east of Pearl River in Rankin County. Appellees own lands adjacent to the airport in Rankin County.
The proceedings below were initiated by the Wrights, and were in the nature of what has become known as an "inverse condemnation" suit. Their bill of complaint, filed in the Chancery Court of Rankin County, was transferred to the Chancery Court of the First Judicial District of Hinds County, in accordance with Mississippi Code 1942 Annotated section 3374-02 (1956) and the case was tried in the latter court.
The complaint, filed March 26, 1963, alleged among other things, that the Airport Authority had appropriated to public use an air navigation easement in the air space "superadjacent" to appellees' lands, without the formality of eminent domain proceedings, and demanded compensation as provided by Mississippi Constitution, Article 3, section 17 (1890). The case was tried upon the bill of complaint and appellant's responsive pleadings denying *Page 711 
the taking and raising a number of other defenses. The trial took place during August, 1966. A final decree was entered on January 30, 1969, holding that such an easement, in fact, had been taken, and awarding the appellees $25,602 as compensation, with lawful interest after the date of the decree.
An ancient Latin maxim declares cujus est solum ejus est usquead coelum et ad inferos. "To whomsoever the soil belongs, he owns also to the sky and to the depths." However, both State and Federal authorities have long since substantially modified that concept.
The airways are not privately owned. The Federal Aviation Act of 1958 section 104, 49 U.S.C.A. section 1304 recognized that there exists a public right of free transit through the navigable air spaces in the United States. In this case, however, there was evidence tending to show, and the substance of the chancellor's finding was that in the use of the airport facilities, low overflights of great numbers of aircraft of all types, private, commercial and military, in their landings and takeoffs, habitually and constantly invaded the air space immediately superadjacent to appellees' property, that this went on regularly 24 hours of every day, and substantially impaired appellees' enjoyment and use of their property.
In reaching his conclusion that this amounted to a constitutional taking of private property for public use by the Airport Authority, the court followed Griggs v. County of Allegheny, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585, rehearing denied 369 U.S. 857, 82 S.Ct. 931, 8 L.Ed.2d 16 (1962). There, noise, vibration and fear caused to the occupants of plaintiffs' residential property located near a runway of the airport by constant and extremely low overflights, interfered with the use of the plaintiffs' property. Griggs, like the present case, dealt with an "inverse" eminent domain proceeding instituted by a property owner. In Griggs, the United States Supreme Court, in reversing the Supreme Court of Pennsylvania, held, inter alia,
that there had been an interference with plaintiffs' property to an extent which amounted to a "taking", in the constitutional sense, of an air navigation easement for which compensation must be made.
In Griggs the majority opinion mentioned no date to which the amount of compensation should be related. Reference to the Pennsylvania Supreme Court decision, 402 Pa. 411, 168 A.2d 123
(1961) (reversed in Griggs, supra), and to the dissent of United States Supreme Court Justice Bell, would indicate that the date used in that case was the date on which the airport officially had begun operating. This feature of the case was not disturbed and apparently was not reached by the United States Supreme Court in deciding Griggs.
The Airport Authority makes several assignments of error. Of these, three require discussion. It is contended that: (1) there was no such invasion of appellees' property shown by the evidence as would constitute a constitutional taking for which compensation became due; (2) if mistaken in that contention, the chancellor erred in fixing the amount of compensation as of the date of trial, rather than as of the date of taking; and (3) judgments in former eminent domain proceedings, also involving lands of appellees, were res judicata and barred the present suit.
The issue as to whether, in fact, there had been or had not been an appropriation to public use by the Airport Authority of an easement was sharply contested. As to this, the testimony was conflicting and was of such a character as to place the resolution of the issue within the province of the chancellor as trier of facts. It is sufficient to say that there was evidence tending to show that such a taking actually had occurred and that it was sufficient to sustain the chancellor's factual finding to that effect. *Page 712 
Appellant next argues, in effect, that Federal legislation has placed the navigable air spaces of the United States in the public domain, that the United States has "preempted the field" under congressional enactments, and that recovery, if had at all, must be had against the United States.
In Jackson Municipal Airport Authority v. Evans, 191 So.2d 126, 130 (Miss. 1966) this Court said:
 Because of the decision in Causby, [United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206] the Congress amended the definition of "navigable airspace" to read as follows:
 "`Navigable airspace' means airspace above the minimum altitudes of flight prescribed by regulations issued under this chapter, and shall include airspace needed to insure safety in take-off and landing of aircraft." 72 Stat. 739 (1958), 49 U.S.C. § 1301(24) (1964).
 Appellants in their brief would leave the impression that the Federal Aviation Act of 1958 "pre-empted the field" under the supremacy clause of the Federal Constitution and gave carte blanche authority to municipalities throughout the land to appropriate whatever airspace they desired to insure safety in take-off and landing.
 This is not how the Supreme Court of the United States interpreted the Federal Aviation Act of 1958 in Griggs v. County of Allegheny, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962), a case subsequent to the amendment of the federal act.
 In Griggs, the county had designed plans for its airport, including the arrangement of its take-off approach areas, in compliance with federal requirements and under supervision of and subject to the approval of the Civil Aeronautics Administrator.
 In the Griggs case, as in the case at bar, the enabling legislation had included authority to acquire air navigation easements, but none had been acquired from the plaintiff whose property was located near the end of a runway. The plaintiff in Griggs alleged that the constant and extremely low over-flights interfered with the use of his property and deprived him of property without due process of law, in violation of his rights under the Fourteenth Amendment. The Supreme Court held that the interference with plaintiff's property caused by these over-flights amounted to a taking in the constitutional sense of an air easement, for which compensation must be paid by the county.
The chancellor found that, although the Airport Authority had acquired the easement informally, without resorting to eminent domain or other legal process, there had been an actual taking for public use of the private property of appellees for which they were entitled to recover compensation, as provided by Mississippi Constitution Article 3, section 17 (1890). We are unable to say that he was manifestly wrong in so deciding.
Appellant next says that, nevertheless, the chancellor erred in fixing the amount of compensation as of the time of the trial (which took place in August, 1966), rather than as of the date of taking.
Appellant points out that the airport officially was opened to regular traffic on July 8, 1963. It is argued that the taking occurred, if at all, upon that date. Appellees filed suit on March 26, 1963, the trial took place in August, 1966, and a final decree was entered on January 30, 1969.
In electing to base the amount of his award upon evidence of values and conditions existing at the time of trial, rather than at the time of taking, the chancellor noticed the diversity of views expressed by the authorities in dealing with this problem. He quoted from 26 Am.Jur.2d *Page 713 
Eminent Domain section 152 (1966) where it is said:
 The courts are not agreed as to whether, in the case of a wrongful pre-condemnation entry by the condemnor, valuation should be made at the time of the original wrongful entry or at the time of the initiation of subsequent condemnation proceedings. One line of cases has held the date of the original wrongful entry to be the significant point of time for purposes of valuation of the property being condemned, and it has been so held both where the state or some other public body is the condemnor and in cases involving condemnation suits by or against private corporations after a wrongful entry. Another line of cases has held that damages or compensation must be assessed at the time of condemnation rather than at the time of the tortious precondemnation entry, and it has been so held both where the condemnor was the state itself or some other public body and in cases involving condemnation by a private corporation. There is also support for the intermediate view that where there was a wrongful entry, the condemnee should be allowed to elect whether to take the value of the property at the time of condemnation or at the time of original entry. And there are cases where the courts have specifically indicated that the trespassing condemnor must pay the higher price because of its wrongful act.
In 27 Am.Jur.2d Eminent Domain section 478 (1966) the nature of the remedy by inverse condemnation is discussed:
 In many jurisdictions, `inverse condemnation,' or a proceeding in the nature thereof, is a remedy available to one whose land has been taken for public use. `Inverse condemnation' has been characterized as an action or eminent domain proceeding initiated by the property owner, rather than the condemnor, and has been deemed to be available where private property has been actually taken for public use without formal condemnation proceedings and where it appears that there is no intention or willingness of the taker to bring such proceedings. It has also been deemed to be available where property is taken for a public purpose by a municipality or other agency having the power of eminent domain under circumstances such that no procedure provided by statute affords an applicable or adequate remedy to the owner to obtain just compensation for his property in accordance with his constitutional right thereto.
In Pearl River Valley Water Supply District v. Wright,186 So.2d 205, 206 (Miss. 1966) there was a conventional condemnation. The rule in such cases was expressed thus:
 This Court has firmly established the rule that the time of taking, for the purpose of determining due compensation, is the date of the institution of the eminent domain suit. Pearl River Valley Water Supply Dist. v. Brown, 254 Miss. 685, 182 So.2d 384, decided January 31, 1966; Miss. State Highway Comm'n v. Hemphill, 253 Miss. 507, 176 So.2d 282, decided June 14, 1965; Pearl River Valley Water Supply Dist. v. Wood, 252 Miss. 580, 172 So.2d 196, decided February 22, 1965.
In Pearl River Valley Water Supply District v. Wood, 252 Miss. 580, 595, 172 So.2d 196, 202-203 (1965) this Court used the following language:
 What is the act which does give due and binding notice upon the landowner and also the condemnor? It is the institution of the suit in the special court of eminent domain. This is the date of the taking. It is the value of the land immediately before this date which the statute contemplates will constitute the `before the taking' computation.
Both of the above cases involved, of course, conventional condemnation proceedings instituted by a public agency against *Page 714 
a land owner, while the present case is one of inverse condemnation, begun by the land owner against the public agency, seeking compensation for a property right already appropriated to public use.
As said in the Wright case, supra, the rule in conventional condemnation cases is firmly established in this state that compensation is to be calculated as of the date of taking, which is the date on which the application or petition is filed by the condemnor. We have concluded that constitutional compensation in cases of inverse condemnation likewise should be based on values and conditions as they were at the time of taking. Obviously, in such a case, the taking necessarily antedates the commencement of a suit by the owner, which must be based upon the premise that a taking already has occurred. The cause of action accrues when compensation becomes due, which is at the time of taking. The owner, of course, may sue immediately. The public agency having failed to bring eminent domain proceedings, it devolves upon him to determine the exact date on which his suit for compensation shall be filed. But a delay in the trial of the issues thereafter should not affect the amount justly due as compensation for the property or property right taken.
The Wrights began their suit for compensation on March 26, 1963, upon the basis that the easement had been taken. Due to unavoidable delays, the trial did not take place until August, 1966. The chancellor used the date of trial as the date of taking and fixed the amount of compensation upon evidence of conditions and values existing at that time. Since the cause of action did not accrue until after the taking, the actual taking must have occurred prior to the filing of suit in 1963. Use of the trial date as the time of taking is unrealistic in that it ignores this fact, as well as changes in conditions occurring in the interim, such as fluctuations in the general economy, changes in the character of the neighborhood or in the property itself or in its surroundings. All of these things are factors capable, at least, of materially altering market values and, consequently, of affecting the amount due as compensation. The effect of the use of the trial date as the date of a taking which must have occurred, of necessity, almost six years previously, is demonstrated by the fact that at least one of the expert witnesses who testified had made the inspection upon which he based his testimony only four or five days prior to testifying.
The filing of a bill demanding compensation amounted to a formal assertion on the part of appellees that, at the time it was filed, the taking was an accomplished fact. The court, on evidence, sustained their bill and awarded compensation. This necessarily involved a finding that the taking had been complete and compensation due when suit was commenced.
The following statement of the reasons supporting the view that, in cases of inverse condemnation, the amount of the award should be fixed as of the date of taking, appears in Annot., 2 A.L.R.3d 1038 (1965):
 (1) it simplifies the problem of valuation because of its fixed rather than shifting date; (2) the condemnee, by failing to assert his rights seasonably when the law gives him ample remedy, is not entitled to a different valuation in point of time; (3) the condemnor is not a common trespasser because of its right of eminent domain; (4) the measure of damages is the same whether or not condemnation proceedings were instituted prior to entry, namely, the value of the land without regard to benefits resulting from the improvement; and (5) the ascertainment of the value of the property at the time of the condemnation proceedings would, in case of depreciation of the property after the entry or appropriation work manifest injustice to the condemnee.
In State of Oregon by and through State Highway Commission v. Stumbo, 222 Or. 62, *Page 715 
352 P.2d 478, 2 A.L.R.3d 1028 (1960), the Court after reviewing the authorities said:
 "* * * Just compensation for the land at the time of its taking, paid before or concurrently with its appropriation, was a right of the appellant. If there was an entry upon, and appropriation of the lands, without the consent of the owner, and without having the compensation ascertained, and making payment of it, there were remedies to which he could have resorted, protecting himself, regaining his possession, and compelling the ascertainment and payment of the compensation. If he is negligent — if he stands by in silence, suffering the wrongful entry, or continuance of possession under it, the construction of costly improvements, not necessary to the enjoyment of the freehold, inconvenient to his use and occupation, valuable to him only because he may dissever them, converting them again into personal property, and valuable only to the party making them for the uses to which they are dedicated — there is but little of equity in a claim that the measure of his compensation shall be increased by the value of the improvements, or that the time at which such compensation is to be estimated shall be varied. * * *"
In a case such as this, an "inverse condemnation," for reasons closely analogous to those mentioned in the Wright and Woodcases, supra, the amount of the compensation should be determined as of the date of taking. As the owner's right to claim compensation is immediate, use of the date of filing as the date of taking is more realistic and definitizes the time to which evidence is to be addressed both as to the nature and extent of the taking and as to the amount of compensation due.
The final argument of the Airport Authority which merits discussion is that the judgments in several former eminent domain proceedings involving lands of the Wrights were res judicata
and barred recovery in the present case. In the former suits, certain portions of the Wrights' land had been acquired in fee, and an easement had been acquired on another.
In support of this argument appellant cites Mississippi State Highway Commission v. Tomlinson, 223 Miss. 623, 78 So.2d 797
(1955). It is argued that all of the former acquisitions had been of parts of the total acreage owned by the Wrights, that the jury, in assessing damages, applied the "before and after rule," and that the awards must be assumed to have included all consequential damages to the remainder of the tract from which the parts taken had been severed.
In Tomlinson, a highway right of way had been acquired by the Highway Commission from Tomlinson in eminent domain proceedings. When the highway, including approaches for a new bridge over certain railroad tracks, actually was constructed on the right of way so acquired, the grade opposite Tomlinson's remaining property, was raised some four to eight feet. Tomlinson sued for additional damages. In reversing a jury verdict awarding him $5,000, this Court held, in substance, that the rights acquired by the Highway Commission in the eminent domain proceedings permitted them to use the right of way for the "proper construction of the improvement," in that case, the highway including the bridge approaches. The Court held that no further recovery could be had for "items which were or might have been considered in the original proceeding, the presumption being that all proper damages were considered in such proceeding."
In the case here, the chancellor found that the acquisition of specific property, other than that now involved, in the former eminent domain proceedings, did not carry with it a right to impose upon the residue of the Wright property, that is, to say, the portion from which the part taken had been severed and which had not been acquired, a further incursion in the *Page 716 
form of constant low overflights in the air space immediately superadjacent to such untaken portion. Appellant's position with respect to the question first discussed above, as to whether such flights over the land still owned by the Wrights, in fact, were taking place, was that planes in taking off and landing consistently followed certain well defined flight patterns and did not cross or invade the air space above the remaining Wright property. The chancellor was justified in finding that the air space involved in this case was that superadjacent to lands of the Wrights which were other and distinct from those formerly acquired by the Airport Authority as well as from those over which an easement had been acquired. In Tomlinson, there was no departure from the well defined limits of the right of way acquired, or from its use for the specific purposes for which it had been taken. Consequential damages to the remainder of Tomlinson's property from the construction of the highway upon this right of way necessarily were included, it must be assumed, in the eminent domain award. Unquestionably, if the Highway Commission had sought to vary the location of the right of way, so as to cross Tomlinson's remaining property by another and different route, he would have been entitled to recover.
It cannot be said that the Airport Authority acquired the easement involved here in any of the former suits. Consequential damages to the remainder of the Wrights' property from the projected use of the part taken will be presumed to have been included in the award. But no right or easement in or over the remainder, neither sought nor described in the eminent domain proceedings, can be assumed to have been acquired.
The decree appealed from will be affirmed, except as to the amount of the award. It will be reversed and remanded for the single purpose of fixing the amount of compensation due, the same to be fixed upon the basis of values and conditions existing upon the date of the filing of the suit.
Affirmed in part and reversed and remanded in part.
ETHRIDGE, C.J., and RODGERS, PATTERSON and ROBERTSON, JJ., concur.