IN THE SUPREME COURT OF MISSISSIPPI
NO. 96-CA-01273-SCT

*STANLEY SIMMONS AND WIFE, SONNIA SIMMONS, OWNERS*

*v.*

*MISSISSIPPI TRANSPORTATION COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/13/96 |
| TRIAL JUDGE: | HON. MIKE SMITH |
| COURT FROM WHICH APPEALED: | WALTHALL COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEYS FOR APPELLANTS: | VIRGIL G. GILLESPIE |
| | BREED O. MOUNGER, JR. |
| ATTORNEY FOR APPELLEE: | JOHN H. OTT |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | AFFIRMED - 07/23/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/17/98 |

**BEFORE SULLIVAN, P.J., ROBERTS AND WALLER, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The primary issue presented by this case is whether a Special Court of Eminent Domain has authority to decide the issue of title. The Simmonses assert that only the chancery court can solve the title question, and the special court of eminent domain lacks authority to hear the issue regarding previous acquisition of the access rights.

¶2. The Commission's position is that the Special Court of Eminent Domain may decide questions of legal title by way of pendent jurisdiction whenever those issues arise from a common nucleus of fact. This Court answered this question in *McDonald's Corporation v. Robinson Industries, Inc.*, 592 So.2d 927, 934 (Miss. 1991) (*quoting* *Hall v. Corbin*, 478 So.2d 253, 255 (Miss. 1985)).

> Clearly, trying title is not limited to the chancery court if another court has subject matter jurisdiction of the action and the issue of title is pendent to that claim. Historically, this Court has allowed courts other than chancery to try title where that issue is incidental to the main action. Where the eminent domain court has subject matter jurisdiction of a condemnation action based upon the pleadings presented by the parties, the court should be allowed to

adjudicate title where that issue arises out of the same occurrence.

*Id*. at 934-35.

¶3. On January 12, 1996, the Mississippi Transportation Commission filed a Complaint for Special Court of Eminent Domain against Stanley and Sonnia Simmons in Walthall County. The Commission sought to obtain rights of access from the Simmonses in order to extend the U.S. Highway 98 Tylertown Bypass to four lanes, as part of a limited access project. The Commission attached its Order to Condemn the access rights to its complaint, referencing a December 13, 1977, Controlled Access Order indicating that ingress and egress from Highway 98 would be prohibited. The Commission's Statement of Values indicated that the fair market value of the property was $0, but the Simmonses filed a Statement of Value, estimating the value of the access rights to be $129,600.

¶4. Shortly after trial began on June 5, 1996, it became apparent that a legal issue existed on whether the Commission had previously obtained title to the access rights by deed from the former owners of the Simmonses' property, Mr. and Mrs. Humphrey Breeland. At the suggestion of the Simmonses, the trial court held a special hearing on the issue of title, after dismissing the jury and declaring a mistrial in the condemnation suit.

¶5. On November 13, 1996, Judge Mike Smith entered final judgment in favor of the Commission. Judge Smith found that based on the language in the deed, the consideration paid by the Commission to the Breelands covered all of the access rights along the Highway 98 Bypass, other than the driveway excepted on the plat of the proposed project filed in the Walthall County Chancery Clerk's Office in 1980. As a result, Judge Smith ordered that the Simmonses were not entitled to any compensation for the claimed taking of their access rights.

¶6. We have responded to the first question on this appeal and now turn our attention to the charge that the trial judge made erroneous findings of fact and that the Simmonses are entitled to compensation for the taking of access rights.

¶7. It is argued that it is contrary to the evidence to find that the Breelands received full compensation for the access rights in the 1978 deed to the Commission. It is further asserted that the deed from the Breelands to the Commission does not specifically grant the particular access rights in question here, so the deed is not effective in conveying those rights to the Commission.

¶8. To convert an existing highway to a controlled access facility, the Commission must either receive consent from abutting landowners or purchase their access rights. No consent is required for the construction of a new controlled access facility. Miss. Code Ann. § 65-5-5 (1991). Access rights are a compensable right for which the Commission must pay if it limits access.

> This Court recognizes that persons owning property abutting streets have a right to reasonable access to their property from the street and that altering the access to property from the street may damage the property. The property owner is basically given an easement in the street. Where alteration of access diminishes the value of property the owner is entitled to compensation.

*Gilich v. Mississippi State Highway Comm'n*, 574 So.2d 8, 12 (Miss. 1990).

There is no right of direct access, however, to a highway constructed upon a new right-of-way where no highway previously existed if the new highway was designated as a controlled access facility from the beginning. No right of direct access ever accrues to such a highway. An abutting landowner has no right to compensation for denial of access to the new highway because the right never existed.

*State Highway Comm'n of Mississippi v. McDonald's Corp.*, 509 So.2d 856, 861 (Miss. 1987) (*quoting* **Morehead v. State Dep't of Roads**, 236 N.W.2d 623, 626 (Neb. 1975)).

The rule here and elsewhere is that where the landowner had no pre-existing right of access the mere fact that a limited access highway is constructed adjacent to or across his property either by totally new construction or by re-routing or relocating an existing highway will not be sufficient to create in the property owner a right of access which the State must then condemn. Appellant cannot claim damages for the claimed taking of a right that never existed.

*Morris v. Mississippi State Highway Comm'n*, 240 Miss. 783, 790, 129 So.2d 367, 370 (1961).

¶9. The Breelands transferred to the Commission approximately 7.36 acres of land for the proposed Highway 98 project for $28,570. Other deeds executed at the same time for the same highway project contained specific language granting the Commission any abutters' access rights, but the deed from the Breelands contained no such language. The language in the Breeland deed relied upon by the Commission reads as follows:

It is further understood and agreed that the consideration herein named is in full payment and settlement of any and all claims or demands for damages accrued, accruing, or to accrue to the grantors herein, their heirs, assigns, or legal representatives, for or on account of the construction of the proposed highway, change of grade, water damage, *and/or any other damage, right or claim whatsoever*.

It is further understood and agreed that this instrument constitutes the entire agreement between the grantor and the grantee, there being no oral agreements or representations of any kind.

(emphasis added).

¶10. The Simmonses maintain that the trial court misinterpreted the clause in the Breelands' deed to the Commission regarding limitation of future claims. Their argument is that the taking of access rights is not the same as damages from highway construction, so the clause does not apply.

¶11. Whether the clause was effective in transferring access rights to the Commission is actually irrelevant. From its inception, the Highway 98 Bypass project was classified as a controlled access facility. When the Commission purchased the 7.36 acres from the Breelands to construct the new bypass, the Breelands held no access rights, other than access to Highway 27 at their driveway, so no compensation was necessary for taking the access rights. *McDonald's Corp.*, 509 So.2d at 861; *Morris*, 240 Miss. at 790, 129 So.2d at 370. The language in the other deeds granting the Commission any abutters' access rights was also unnecessary here, because there were no access rights to be taken. The 1978 deed, combined with the December 13, 1977, Controlled Access Order,

are sufficient to grant the Commission control of access to the newly constructed bypass. The clause in the Breeland deed only further protects the Commission from subsequent purchasers, such as the Simmonses, receiving additional compensation for any alleged access rights. Judge Smith was correct in finding that the Simmonses were not entitled to compensation, because the Commission was taking no additional access rights.

**Should the Simmonses Recover as Bona Fide Purchasers For Value Without Notice?**

¶12. The Simmonses contend that because the highway plans were never actually filed in the Walthall County Chancery Clerk's Office, they had no notice that the land they purchased from the Breelands was subject to a controlled access order. Therefore the Simmonses claim compensation from the Commission for the taking of their access rights, as bona fide purchasers for value without notice. The issue before us is whether there was sufficient evidence presented at trial to support the trial court's finding that the highway project plans had been filed in the chancery clerk's office in 1980. The parties stipulated that the plans were in a book in the chancery clerk's office, but were not stamped with a filing date, and were not recited in the direct or reverse index. Gary Williams, the Commission's eminent domain specialist, testified that the highway plans would have been placed in the clerk's records immediately after the project was completed, either in 1978 or 1979. Mr. Williams later admitted that it could have been as late as 1981 or 1982 when the highway plans were received by the clerk's office. The Simmonses purchased their property from the Breelands on April 2, 1980. There is sufficient evidence in the record to say that the trial court was not manifestly wrong in finding that the plans had been filed in the chancery clerk's office in 1980.

¶13. Our law seeks to protect bona fide purchasers for value without notice and defines a bona fide purchaser as "one who has in good faith paid a valuable consideration without notice of the adverse rights of another." *Giesbrecht v. Smith*, 397 So.2d 73, 77 (Miss. 1981) (*quoting* 8 Thompson on Real Property § 4312 (1963)). In *Bedford v. Kravis*, 622 So.2d 291 (Miss. 1993), we reaffirmed our rule on notice set out in *Dead River Fishing & Hunting Club v. Stovall*, 147 Miss. 385, 113 So. 336 (1927) and *Florida Gas Exploration Co. v. Searcy*, 385 So.2d 1293 (Miss.1980):

> "A purchaser of land is charged with notice not only of every statement of fact made in the various conveyances constituting his chain of title, but he is also bound to take notice of and to fully explore and investigate all facts to which his attention may be directed by recitals in said conveyance contained. The duty is also imposed on him to examine all deeds and conveyances previously executed and placed of record by his grantor--either immediately or remote--if such deeds or conveyances in any way affect his title. And if in any such deed or conveyance there is contained any recital sufficient to put a reasonably prudent man on inquiry as to the sufficiency of the title, then he is charged with notice of all those facts which could and would be disclosed by a diligent and careful investigation."

*Bedford*, 622 So.2d at 295 (*quoting Searcy*, 385 So.2d at 1296) (*quoting Stovall*, 147 Miss. at 395-96, 113 So. at 337-38).

¶14. The Breelands' 1980 deed to the Simmonses does except from the transfer the approximate 7.3 acres conveyed to the Commission, and states the book and page number where the deed was entered in the Land Conveyance Book of the Walthall County Chancery Clerk's Office. The 1978 deed from the Breelands to the Commission indicates the highway project number for which the property was

purchased, the same highway project number listed on both the Controlled Access Order located in the Commission's official minutes, and the highway project plans located in the chancery clerk's office and the MDOT Building in Jackson. Mr. Simmons testified that he and Mr. Breeland discussed the construction of the Highway 98 Bypass when he purchased the property in 1980. A reasonably prudent man in Mr. Simmons's shoes should have investigated the effect of the proposed Highway 98 Bypass project on the title to the property he was purchasing in 1980 given the facts present here. A diligent search would have revealed the highway project plans and Controlled Access Order indicating that the Simmonses had no right of access to the bypass. We therefore conclude that the Simmonses were not bona fide purchasers for value without notice.

## CONCLUSION

¶15. The judgment of The Special Court of Eminent Domain of Walthall County awarding zero compensation to Stanley Simmons and his wife Sonnia Simmons is hereby affirmed.

¶16. **AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**


**McRAE, JUSTICE, DISSENTING:**


¶17. For the reasons set forth in my dissent in *McDonald's Corp. v. Robinson Indus., Inc.*, 592 So. 2d 927 (Miss. 1991), I dissent.