734 So.2d 218 (1999)
Venice BISHOP, Individually and on Behalf of All His Cotenants, Appellants,
v.
MISSISSIPPI TRANSPORTATION COMMISSION, Appellee.
No. 97-CA-00926COA.
Court of Appeals of Mississippi.
January 26, 1999.
*220 Gary Goodwin, Columbus, Attorney for Appellants.
J. Niles McNeel, Louisville, Attorney for Appellee.
BEFORE BRIDGES, C.J., PAYNE, AND SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. The Mississippi Transportation Commission filed an eminent domain petition in the Oktibbeha County Special Court of Eminent Domain. From a jury verdict awarding $8,083.64, the landowner Venice Bishop appeals. He alleges that the Commission's expert witness was not qualified to value timber, that accordingly a mistrial or peremptory instruction should have been granted, and that testimony by Bishop's expert regarding use of the property was improperly limited. We agree that the Commission never put on adequate evidence regarding value and that Bishop was erroneously restricted regarding his evidence. We reverse and remand for further proceedings.

FACTS
¶ 2. This suit resulted from expansion of Highway 25 near Starkville. The Commission sought to condemn 6.7 acres of property owned by Venice Bishop and others. Bishop wished to show that the highest and best use for the land, located about five miles from Starkville, was as rural residential land and that compensation of $80,750 was due. The Commission maintained that the property's best use was as timberland and put the value absent the standing timber at $3,025. The Commission's attempt to indicate the value of the timber was initially thwarted, but ultimately the court permitted testimony that with *221 the timber the property was worth $5,925. The jury awarded $8,083.64.
¶ 3. The land is part of a forty acre tract. The most utilized method of access is across the property of Mr. Lenon West. Bishop proffered testimony that should he wish to develop his land for residences Mr. West would have no objection to granting him an easement. Moreover, even though a written easement did not exist at the time of the trial, Bishop argued that an easement by prescription had matured. The Commission responded that what in fact existed was nothing more than permissive use and any opportunity to access the land across the property of Mr. West could be revoked at the discretion of Mr. West. The court ruled the evidence of an easement was irrelevant.

DISCUSSION

ISSUE 1: Absence of proper evidence by Commission on value
¶ 4. The Commission put on testimony from appraiser Lucy Griffin, an agency employee, regarding the value of the condemned property. Ms. Griffin testified that after analyzing three comparable sales of land she found this property was worth $450 per acre without assessing the timber value. Ms. Griffin stated she had no opinion as to the value of the timber and later testified she was "not an expert in timber value." The property had a maturing stand of timber on it. Indeed, the Commission argued that the best use of the property was to grow timber.
¶ 5. On redirect, the judge allowed Ms. Griffin to testify that the difference between the Commission's statement of values and her estimate, was the timber value. Her only expertise was as to the cleared land value, while someone else had provided the estimate of the timber value.
¶ 6. We start our analysis by noting that the condemnor has the burden of proving the value of the condemned property.
The reason for placing the burden on the condemnor is that if it offers no evidence of the value of the property taken there is no basis for awarding any damages and there could be no compliance with Section 17, Mississippi Constitution. Therefore, failure of condemnor to offer proof of the value of the property taken would require dismissal of the proceedings.
Mississippi State Highway Commission v. Fisher, 249 Miss. 198, 201-02, 161 So.2d 780, 781 (1964). The landowner has no evidentiary burden until a prima facie case is made by the Commission. In order to receive greater compensation, the party whose property is being condemned then must present evidence. Ellis v. Mississippi State Highway Commission, 487 So.2d 1339, 1342 (Miss.1986).
¶ 7. Ms. Griffin based her valuation of the timber on that of an expert timber cruiser who did not testify. The testimony of one expert witness may not serve as a conduit for hearsay about another expert's opinion. If the expertise of the testifying witness is such as to permit that witness's adoption of the statements of a similar expert, then the witness is not a mere conduit. Morley v. Jackson Redevelopment Authority, 632 So.2d 1284, 1293-94 (Miss.1994). Here the appraiser testified that she did not have the skills to value timber. Therefore she merely passed through the information from another expert. The Commission has therefore failed to support an appraisal of the entire property with evidence. At best, the Commission proved only the cut value of the land.
¶ 8. The Commission argues that Bishop invited the timber value testimony by Ms. Griffin by asking her to explain the Commission's statement of values. That statement valued the property at $5,925, while her appraisal of the bare land was $3,025. Seeking an explanation for a discrepancy in an opposing party's evidence is not opening the door to substantive evidence. *222 Her testimony remained unqualified expert opinion.
¶ 9. Ms. Griffin's comparisons to other sales did not involve timber value but rather bare land sales. Ms. Griffin's first comparison involved replanted cut over land which sold for $428 per acre. The second was just for the acreage and did not include the timber value. The price was $546 per acre. The third comparable sale was for $350 per acre but again, timber value was not considered as the property was subject to a lease by Weyerhaeuser for the timber rights. Based on these comparisons she estimated the Bishop property at $450 per acre not counting any timber value.
¶ 10. At the end of the Commission's case, Bishop moved for a mistrial for failure of the Commission to introduce proper evidence of the value of the land. We agree that a mistrial should have been granted, requiring the Commission to begin the proceedings anew. The Commission was proceeding under the "quicktake" provisions that permit title to be conveyed before compensation is set. Miss.Code Ann. § 11-27-85 (Supp.1998). Under the rights granted by that statute, an order was entered November 20, 1996 conveying the property to the Commission upon payment of 85% of the appraised value of the land. Even if subsequent proceedings determine the appraised value was woefully inadequate, title remains undisturbed. Miss.Code Ann. § 11-27-87 (Supp.1998). Therefore, had a mistrial been granted the Commission's use of the property could continue.
¶ 11. Our question is not the Commission's rights to the land, but its right to correct its evidentiary shortcoming at a new trial. Bishop argues that the Commission fumbled its only opportunity. After a mistrial was denied, Bishop presented evidence. He alleges that it became the sole valuation evidence and controls the outcome. Whether this is correct causes us to review the effect of our earlier conclusion that the burden of proof is on the Commission.
"Under those principles, could the Highway Commission stop by simply showing what it wanted for a right of way without going into the question of damages to the landowner? We think not.... The Highway Commission is the actor. It must make out its case before the landowner is called on to introduce evidence."
Mississippi State Highway Comm'n v. Hillman, 189 Miss. 850, 864, 198 So. 565, 568 (1940) (opinion on suggestion of error, quoting withdrawn original opinion in 195 So. 679, 681-82 (Miss.1940)). Without evidence being presented of the before and after value of this timber land, there was no prima facie case as to the total compensation due. The landowner did not need to proceed. Bishop did proceed, however. His witness testified that the value of the 6.7 acres taken was $1500 per acre, and the damage to the remainder of the 40-acre tract was $700 per acre. The witness who presented that testimony was then significantly cross-examined. Even without doubts raised on cross-examination, expert opinions presented to an eminent domain jury are "not to be passively received and blindly followed, but are to be weighed by the jury and judged in view of all of the testimony in the case and the jury's own general knowledge of affairs," and are to be given such weight as the jurors reasonably assign. Warren County v. Harris, 211 Miss. 80, 89, 50 So.2d 918, 921 (1951). We therefore find that the jury did not have to accept any particular value presented by any particular expert.
¶ 12. Therefore, even if we agreed that the only evidence on value was from Bishop, it would be incorrect under these principles regarding the jury's role just to rule that one expert's testimony had to be accepted. We find error in refusing to grant a mistrial, but none under these facts in failing to give a peremptory instruction to consider only Bishop's evidence. A new trial is needed.

*223 ISSUE 2: Existence of easement

¶ 13. At any new trial, the issue could well again arise regarding an easement to Bishop's property. Therefore we address the issue. Without an easement that Bishop claimed existed, the property was landlocked. As a result, the court ruled that its potential for use as rural residential property was too speculative. The alleged easement was based on prescription and had not been the subject of any prior litigation. The court prohibited testimony proving the existence of the easement or indicating residential land values.
¶ 14. We consider as an initial matter whether condemnation actions may resolve whether a property interest even exists. The supreme court has held that a special court of eminent domain may try issues of title. Simmons v. Mississippi Transportation Comm'n, 717 So.2d 300, 301 (Miss. 1998). The question here is not one of title of the land being taken, but it is the related question of the extent of the remainder. That is, does Bishop own not only the forty acres but also, as an appendage to that tract, an easement across adjacent land that affects overall land values? The Simmons court held that "trying title is not limited to the chancery court if another court has subject matter jurisdiction of the action and the issue of title is pendent to that claim. Historically, this Court has allowed courts other than chancery to try title where that issue is incidental to the main action." Id. If the issue is relevant, the question of Bishop's rights to an easement may be tried in the condemnation suit.
¶ 15. The sole bar raised by the trial court to this evidence was that no easement appeared of record, either by instrument or by final court decree recognizing a prescriptive easement. That would mean that no matter how well-established physically and notorious to the community an easement by prescription might be, how accepted it was by the servient estate owner and for how many decades, if the parties never took certain steps to confirm it the matter is academic once the State begins a condemnation action. We find that too limited a view.
¶ 16. Such a rule of law would also mean that if the property being condemned had been acquired by an adverse possessor, that interest could not be asserted and the record title owner would be recognized by the court. The statutes governing condemnation do not limit the parties to those with record title. Under a recent statute specifically governing the Commission, all those who "may have or claim to have an interest" in the property are to be made parties. Miss.Code Ann. § 65-1-303(2)(d) (Supp.1998). The general eminent domain statute has long provided that condemnors must name "all the owners of the affected property" as parties. Miss.Code Ann. § 11-27-5 (Supp. 1998). What in effect the trial court held is that even though all parties with potential interests in the property must be joined, there can be no sorting out of those interests at trial. Perhaps a subsequent proceeding would have to occur in chancery that would ascertain title and then divide up the money awarded by the special eminent domain court. Even if there is some merit to that approach, the issue has been resolved by such cases as Simmons. The court has jurisdiction to decide title. If relevant to value, that jurisdiction includes title to easements across adjacent land not being condemned.
¶ 17. The operation of the sovereign power of condemnation does not cancel the effect of other statutes, such as those providing for title by prescription. If by operation of statute, an easement by prescription had been created, it is as much an interest in property and is entitled to the same protection as an easement created in any other way.
¶ 18. The foregoing merely determines that the special court of eminent domain may decide relevant issues of title. We now must decide whether title to this alleged easement is relevant. There was *224 considerable discussion below of Pearl River Valley Water Supply Dist. v. Brown, 254 Miss. 685, 182 So.2d 384 (1966). That opinion ultimately held that potential use of rural land as residential property was too speculative. However, the court's starting point was this:
The rule of evidence that the jury may consider not only the value of the land as it is presently used by the owner, but also the possibility of its use for other purposes is subject to the qualification that possibilities which are so remote and speculative as to require prospective occurrence of many extrinsic conditions and happenings that have no perceptible effect upon the present market value of the land, should be excluded from the jury. "To warrant admission of testimony as to the value for purposes other than that to which the land is being put, or to which its use is limited by ordinance at the time of the taking, the landowner must first show: (1) that the property is adaptable to the other use, (2) that it is reasonably probable that it will be put to the other use within the immediate future, or within a reasonable time, (3) that the market value of the land has been enhanced by the other use for which it is adaptable."
Id. at 388 (quoting in part NICHOLS, EMINENT DOMAIN § 12.314 at 148-52 (3rd ed.1962)).
¶ 19. This quote does not address the specific evidence that is needed to prove that a use has passed from remote and speculative to imminent and concrete. What is permitted is for an expert to testify as to the highest and best use of the land, which can include solid possibilities for such use. "Highest and best use" does not require that the property then or ever have been so used. It is necessary that the property be "reasonably adaptable" to that use within a reasonable time. The Brown court held that fair market value is what "others would pay for the land without easement or right-of-way outlets across other lands." Brown, 182 So.2d at 387. Under that rule, proof even of easily-acquired and inexpensive easements is irrelevant. Here, though, Bishop argues that he already had an easement. If Bishop can prove that he had an prior easement, then the bar erected by the trial court to presenting evidence that the highest and best use of the property was residential would disappear. To resolve that issue conclusively, the special court must assure that all necessary parties are present. McDonald's Corporation v. Robinson Industries, Inc., 592 So.2d 927, 935 (Miss. 1991) ("application of the Mississippi Rules of Civil Procedure to eminent domain proceedings ensures that all necessary parties to the title dispute will be joined.")
¶ 20. Even if there is an easement, that does not mean that the best use of this property is residential. Bishop is entitled to demonstrate that he has a prescriptive easement. Both he and the Commission are entitled to address by evidence whether the relevance of such an easement, namely supporting the use of the property as residential, is too speculative and remote.
¶ 21. The trial court may well ultimately be correct that to consider this land as residential property was improper. It was error to make that conclusion simply because there was no recorded easement or prior court proceedings confirming an easement.
¶ 22. THE JUDGMENT OF THE OKTIBBEHA COUNTY SPECIAL COURT OF EMINENT DOMAIN IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, KING, AND PAYNE, JJ., CONCUR.
IRVING AND LEE, JJ., NOT PARTICIPATING.